**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CONNECTICUT GENERAL LIFE INSURANCE COMPANY AND CIGNA HEALTH AND LIFE INSURANCE COMPANY,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No.** |
| **v.** | ) ) | |
| **SOUTHWEST SURGERY CENTER, LLC, d/b/a CENTER FOR MINIMALLY INVASIVE SURGERY** | ) ) ) ) | |
| **Defendant.** | | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiffs, Connecticut General Life Insurance Company ("CGLIC") and Cigna Health and Life Insurance Company ("CHLIC") (collectively, "Cigna"), respectfully state as follows for their complaint against Southwest Surgery Center, LLC, d/b/a Center for Minimally Invasive Surgery ("CMIS").

## NATURE OF THE ACTION

1.      Coinsurance and deductibles under health benefit plans sensitize people to the costs of their healthcare and provide them with incentives to choose in-network medical providers who have agreed to accept negotiated rates in exchange for treating plan participants. Some out-of-network providers, however, have adopted a business model in which they submit excessive bills to their patients' healthcare plans, while waiving all or part of the patients' cost shares, so that a patient incurs lower out-of-pocket costs even as the out-of-network provider bills the plan rates well above market. This practice frustrates efforts by the sponsors of health plans to control costs since it gives patients incentive to select care from out-of-network

130917164v1 0963977

providers that claim inflated charges for their services; this practice also undermines the ability of managed care companies to offer robust networks of participating providers since it blunts plan members' incentive to choose in-network care. To discourage fee forgiveness, the plans administered by Cigna exclude coverage for healthcare expenses that a plan member is not personally obligated to pay.

2.     This case arises out of a scheme in which an out-of-network surgery center, CMIS, filed claims with Cigna for inflated and inaccurate charges, while waiving patient cost shares to gain an unfair advantage over Cigna's in-network providers. By means of this scheme, CMIS has unlawfully obtained roughly $800,000.00 from Cigna and the benefit plans it serves.

3.     Cigna is a Connecticut managed care company that administers both self-funded and insured employee health and welfare benefit plans (including, but not limited to, plans insured by Cigna). Cigna has agreed to assist the employer sponsors of these plans in controlling their healthcare costs. One way Cigna does so is by entering into network agreements with healthcare providers under which the providers agree to negotiated rates for their services in return for access to plan members.

4.     While members of Cigna plans may obtain plan benefits for services provided by out-of-network providers, they have incentive to choose in-network providers because they pay lower coinsurance, deductibles, and copayments for in-network services. Conversely, the plans require members to pay higher coinsurance, deductibles, and copayments when they choose care from out-of-network providers.

5.     Without these cost-sharing features, out-of-network providers could demand fees with no relation either to their actual costs or to the actual market for medical services, and members would have no incentive to avoid those providers.

130927459v1 0963977

6.     CMIS is an outpatient surgical center that does not participate in Cigna's provider networks. CMIS induces members of Cigna health plans to have surgeries performed at CMIS's surgical center either by misrepresenting that the patient will not be liable for any cost shares under his or her plan or by promising to bill the patient as if CMIS were within Cigna's network. CMIS then misleadingly bills Cigna and the plans it administers for excessive fees that misrepresent what CMIS actually intends to collect.

7.     For example, for one Cigna plan member [MK, dos 2/15/11], CMIS submitted "charges" of $9,150.00 to Cigna. Based on these charges, the patient's cost-share under his or her plan was $3,768.50, but CMIS charged the patient only $2,000.00.

8.     For another patient [JT, DOS 11/21/2011], CMIS submitted "charges" of $51,020.00 to Cigna. Although the patient's liability under the plan was $1500.00, CMIS did not bill the patient.

9.     Because CMIS systematically waives patient cost shares, the health benefit plans covering the patients pay far more for services than the plans are obligated to pay. By leading patients to believe that their cost shares will be the same as or less than what they would incur at an in-network provider, CMIS increases the volume of its business, gains an unfair advantage over in-network providers, and increases costs to benefit plans.

10.     Cigna has paid CMIS roughly $800,000.00 in reliance on fraudulent claims in which CMIS significantly overstated its charges. Cigna brings this action to recover the payments it was fraudulently induced to make and to obtain a declaratory judgment that CMIS is not entitled to reimbursement under the plans due to its practice of waiving cost shares.

130927459v1 0963977

## PARTIES, JURISDICTION AND VENUE

11.     Plaintiffs, CGLIC and CHLIC are corporations organized under Connecticut law with their principal place of business in that state. Defendant, CMIS, is a business corporation organized under Illinois law with its principal place of business in Illinois.

12.     This Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331 because this action concerns the parties rights and obligations under employee welfare benefit plans that are governed by ERISA, 29 U.S.C. § 1002(1).

13.     In addition, the Court has jurisdiction of this action pursuant to the diversity statute, 28 U.S.C. § 1332, because the parties are of diverse citizenship (both CHLIC and CGLIC are deemed to be citizens of Connecticut, while CMIS is deemed to be a citizen of Illinois), and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a) because CMIS resides in this district and because a substantial part of the events or omissions giving rise to this action occurred in this district.

## BACKGROUND FACTS

15.     Cigna administers health benefit plans that employers sponsor in order to provide healthcare coverage to employees and their dependents. At times, Cigna also insures employer-sponsored health plans. Cigna provides claims administration and insurance services to health plans located throughout the United States, including Illinois.

16.     Because Cigna is granted discretionary authority over the payment of benefits under employer-sponsored health benefit plans, it is a "fiduciary" in its role as a claims administrator under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(21).

130927459v1 0963977

17.     Cigna plans provide members with coverage for "Covered Expenses," which are defined as "expenses incurred by or on behalf of a person for" medically necessary services. (See page 23 of the sample plan document attached hereto as Exhibit 1, which reflects the standard terms of the health plans Cigna offers to employers.) To receive benefits under a plan, a member must pay a portion of the covered expenses for the medical service or supply. (Plan document at 10). The portion paid by a plan member can take the form of: (a) coinsurance, which is a percentage of the allowed amount of the provider's charges that the member pays; and (b) a deductible, which is the dollar amount of covered expenses that the member must pay during the calendar year before the plan begins providing benefits. (Plan document at 10).

18.     Cigna plans often provide coverage for both "in-network" services rendered by a network of "participating providers" and "out-of-network" services rendered by "non-participating providers." (Plan document at 10).

19.     If a member receives a service from a provider that contracts to be part of Cigna's network (an "in-network" or "participating" provider), the plan pays the provider the amount that the provider agreed to accept (in its network contract), and the member pays any applicable coinsurance, copayments, and deductibles based on the coverage for in-network services specified in the member's plan.

20.     In-network providers contract with Cigna to provide medical services to plan members for a negotiated set of fees as payment in full for covered services. In exchange for agreeing to accept negotiated rates, in-network providers receive greater access to members of Cigna-administered plans as a source of patients.

21.     Out-of-network providers have not entered into contracts to accept negotiated rates and instead set their own fees for services they provide to plan members. The amounts that

5

non-participating providers charge for treating plan members are often higher than the amounts charged by participating providers.

22.     Cigna-administered plans typically provide that members must pay higher deductibles and coinsurance when they select out-of-network care instead of in-network care. (*See* Plan document at 8, 10, 11-15). The plans also set higher out-of-pocket maximums for out-of-network care. The out-of-pocket maximum is the amount a member must pay for coinsurance and deductibles before a plan covers 100% of Covered Expenses for the member's care. (Plan document at 10).

23.     Deductibles, coinsurance, and out-of-pocket maximums are important features in the design of benefit plans because they create incentives for plan members to avoid unnecessary care and to use participating providers instead of out-of-network providers (who in general charge higher fees). By encouraging the use of in-network providers, the cost-sharing features in Cigna plans reduce healthcare costs for the employers sponsoring the plans and enable employers to offer broader coverage to their employees.

24.     Some out-of-network providers seek to gain patients and referrals by not billing patients for deductibles and coinsurance under their plans. This practice, known as "fee forgiving," lowers out-of-pocket expenses for plan members, but frustrates plan sponsors' efforts to control healthcare costs by eliminating plan members' incentive to use in-network services instead of out-of-network services. Fee-forgiving out-of-network providers charge benefit plans far more than in-network providers, while simultaneously gaining an unfair advantage over in-network providers who bill patients for their cost shares. This practice has the effect of reducing a patient's out-of-pocket costs while driving up the costs of the patient's plan.

130927459v1 0963977

25.     Cigna plans contain provisions that discourage billing practices whereby out-of-network providers waive patients' cost shares while billing the plans for excessive charges.

26.     First, the plans exclude payment for "charges which you [the plan member] are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan." (Plan document at 36). Similarly, they exclude payment for "charges which would not have been made if the person had no insurance." (Plan document at 38). Because the plans do not cover expenses that a member is not obligated to pay, the plans do not afford benefits when, for example, a provider such as CMIS submits a claim but does not bill the patient for, or have any intention of collecting, the patient's coinsurance and deductible under the plan.

27.     Second, Cigna plans provide that benefits for covered services are limited to the "Maximum Reimbursable Charge." This amount typically is the lesser of the "provider's normal charge for a similar service or supply" or the amount specified in a schedule of fees charged by other providers in the same geographic area for the service or supply. (Plan document at 60). These plans exclude payment for expenses "to the extent that they are more than Maximum Reimbursable Charges."  (Plan document at 38).

28.     Third, the plans afford coverage only for "Covered Expenses," which are defined as "expenses incurred by or on behalf of a person for" medically necessary services. (Plan document at 23). If a provider such as CMIS does not bill the patient for the full amount of the patient's responsibility for alleged charges, the patient has not incurred any "Covered Expenses," and the plan affords no benefits for the services provided.

## CMIS'S FEE-FORGIVENESS SCHEME

29.     Between at least 2009 and the present, CMIS promoted itself to Cigna plan members by representing that they will be billed as if CMIS is an in-network provider, or by

7

representing that it will accept reimbursement under the plan as full payment, sparing them of the

need to pay their out-of-network cost shares. After gaining patients in this manner, CMIS

submitted claims to Cigna containing grossly inflated charges for its surgical services. The

charges were false and misleading because they did not reflect what CMIS actually intended or

expected to collect. Cigna, however, relied on the false representations made in CMIS's claims

by paying more for CMIS's services than it was obligated to pay under the relevant plans.

30.     In carrying out this scheme, CMIS called Cigna  before a patient's expected date

of service to confirm the patient's eligibility and obtain information about the patient's benefits.

Prior to obtaining the patient's eligibility or benefits information, since February 2013, the CMIS

representative heard the following, pre-recorded disclaimer:

> By continuing with this call, you understand, accept and agree that the following
> covered services information does not guarantee coverage or payment and is
> subject to all benefit plan provisions.  Please refer to the Summary Plan
> Description for coverage.  Payment for services will be based on medical
> necessity, plan provisions, including limitations and exclusions, and eligibility at
> the time of service.

A similar disclaimer played at the beginning of calls made before February 2013.

31.     By continuing with the call, the CMIS representative thereby accepted and agreed

that Cigna did not guarantee or payment by providing eligibility and benefits information, and

that Cigna would base its coverage and payment decisions upon the applicable plan provisions,

including its exclusions.  CMIS also received the identical disclaimer in writing when Cigna sent

CMIS its Explanation of Provider Payments for processed claims.  Thus, CMIS received this

notice orally and in writing hundreds of times over the past two years.

32.     After hearing the aforementioned disclaimer and deciding to proceed with the

call, the CMIS representative then requested eligibility and benefits information for the

prospective Cigna patient from Cigna.  Upon information and belief, the CMIS representative

8

never disclosed to Cigna its anticipated charges nor asked Cigna the expected payment or reimbursement on any particular claim. Instead, the CMIS representative simply asked Cigna to report the most current eligibility and benefits information for the prospective Cigna patient.

33.     As part of the scheme to defraud, the CMIS representative asked Cigna to provide both the in-network benefits and out-of-network benefits of the prospective patient even though CMIS was an out-of-network provider. CMIS never disclosed to Cigna that it wanted the in-network benefits information because CMIS only intended to charge the prospective Cigna patient at most their in-network benefits cost share and to waive the balance.

34.     When providing the benefits information to CMIS, Cigna informed CMIS that the in-network benefits were based upon the contracted rate, and that the plan did not pay until the in-network deductible had been met. Similarly, Cigna told CMIS that the out-of network benefits were based upon the Maximum Reimbursable Charge, and that the plan did not pay until the out-of-network deductible had been met. CMIS typically asked for, and Cigna provided, the unmet in-network and out-of-network deductibles and out-of-pocket maximum amounts during the benefits call.

CMIS then submitted claims to Cigna containing false and misleading charges because they did not reflect CMIS's actual charges, or what CMIS actually intended or expected to collect. For example, if CMIS submitted a claim to Cigna for charges of $10,000, and the patient's responsibility for coinsurance under the plan was 40% of that amount (which would be the case if the billed charge equaled the allowed amount under the plan), the plan payment would be $6,000 and the patient responsibility would be $4,000. Because CMIS waives or deeply discounts patient responsibility amounts, the $10,000 charge shown on the claim submitted to CIGNA is a sham charge that has no relationship to the amount CMIS actually intends to collect.

9

CMIS's actual charge is based only on the reimbursement it receives under the plan, with perhaps a nominal payment from the patient.

35.     In addition to being disproportionate to its actual charges, the charges on CMIS's claims are also far higher than what in-network providers charge for the same services. They grossly exceed the market rate for the services performed by CMIS.

36.     Because patients do not pay CMIS based on the sham charges shown on its claims, they have no incentive to choose in-network care, which increases costs to the plan. Patients actually can lower their out-of-pocket responsibility by seeking care from CMIS since it waives or discounts patient responsibility.

## CIGNA'S RELIANCE ON CMIS'S FALSE AND MISLEADING CLAIMS

37.     Since at least 2009, CMIS has engaged in a fraudulent scheme in which it sent Cigna claims containing inaccurate and excessive charges for the services it allegedly rendered to Cigna plan members. The table attached as Exhibit 2 lists the claims that CMIS submitted and that Cigna has paid since 2010. Following each date of service listed in Exhibit 2, CMIS sent Cigna a claim that listed the patient's demographic information, the date of service, the procedures performed, and CMIS's charges. The claims contained material misrepresentations and omissions about the amount of CMIS's charges.  Specifically, the claims grossly overstated CMIS's actual charges since CMIS did not intend or expect to collect the full amounts shown, but rather intended to collect the amount paid by Cigna on behalf of the plan, and failed to disclose that CMIS had waived the patient's responsibility for a certain portion or all of its charges.  In reliance on the false representations and material omissions in CMIS's claims, Cigna paid CMIS roughly $800,000.00 on behalf of the employer-sponsored plans it serves.

38.     In the spring of 2012, Cigna began an investigation into whether CMIS was billing plan members for their cost shares.

10

39.     In May 2012, Cigna's investigator asked a plan member (LM) why she had chosen to have a procedure performed at CMIS when Cigna had approved the procedure to be performed at an in-network facility. The patient responded that her surgeon said that although he was out of Cigna's network, the facility was in network, and that he would accept plan reimbursement as payment in full because the facility would make up the difference.

40.     A Cigna employee later called CMIS and asked if it was a participating provider. The person who answered the call responded that as long as the caller had out-of-network benefits, the facility would accept the plan payment as if it were in-network.

41.     Cigna's investigator sent letters to a sample of CMIS's patients, asking whether CMIS had billed them for their cost shares, how much it had billed, and whether CMIS accepted plan reimbursement as full payment for its services.

42.     Although one plan member (SK) responded that she had been billed by CMIS for the full amount of her cost share, three members (MP, SW, and MK) reported that they had not been billed their full cost shares. A fourth member (ES) indicated that CMIS had waived his cost share when he disputed it, and a fifth member (CJ) was not sure how much CMIS had billed her.

43.     In letters dated June 11 and July 12, 2012, Cigna's investigator informed CMIS's office manager that Cigna was conducting an audit of CMIS's claims. The letters stated that under the terms of most Cigna plans, plan members incur higher out-of-pocket costs in the form of coinsurance and deductibles when they select care from out-of-network providers such as CMIS. The letters asked that CMIS produce billing ledgers for ten Cigna plan members and disclose its policies for collecting patient deductibles, copays, and coinsurance.  Thus, CMIS specifically knew that its fraudulent billing scheme implicated cost-share provisions of Cigna health benefits plans.

130927459v1 0963977

44.     On July 11, 2012, Cigna sent requests for information about CMIS's bills to a second sample of plan members. In response, one plan member reported that CMIS had billed her nothing although she owed a cost share of $1,500.00.

45.     CMIS concealed its misleading fee-forgiving practices from Cigna by refusing to provide its collection ledgers or billing policies in response to Cigna's request.

46.     In August 2012, Cigna flagged CMIS's account for failure to produce requested information and fee-forgiveness.  The flag caused Cigna's claim system to deny certain claims CMIS submitted after August 2012. The table attached as Exhibit 3 lists the claims that were denied due to the flag.

47.     The Seventh Circuit and other courts have held healthcare plans do not cover a provider's charges when the provider does not collect the patient's cost shares under his or her plan. *See, e.g., Kennedy v. Conn. Gen. Life Ins. Co*., 924 F.2d 698, 701 (7th Cir. 1991); *Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc*., 522 F. App'x 81, 81-82 (2d Cir. 2013); see also HHS OIG Special Fraud Alerts (Dec. 19, 1994) (available at https://oig.hhs.gov/fraud/docs/alertsandbulletins/121994.html) ("Routine waiver of deductibles and copayments by charge-based providers, practitioners or suppliers is unlawful because it results in … false claims … [and] excessive utilization of items and services paid for by Medicare.").

48.     CMIS's practice of waiving patients' cost shares gives it an unfair advantage over in-network providers who collect cost shares, since the patient's out-of-pocket expense may be lower.  Further, because in-network providers charge plans less for their services than CMIS, CMIS's fee-forgiving practices frustrate efforts by Cigna and plan sponsors to provide members with high-quality in-network services while managing healthcare costs.  CMIS's practices

12

actually give patients an incentive to use its higher-cost services rather than lower-cost in-network services. Unless patients have incentive to use in-network services, providers will not have an incentive to join Cigna's networks, which makes it more expensive for employers to offer healthcare coverage to employees and their dependents.

## CLAIMS FOR RELIEF

## COUNT I

### Declaratory Judgment

49.     Cigna incorporates the allegations contained in the preceding paragraphs.

50.     The table attached as Exhibit 2 lists claims that CMIS has submitted to Cigna for treating persons covered under Cigna healthcare plans.

51.     Cigna denied certain claims filed by CMIS due to the latter's failure to produce requested information concerning its billing and collection practices. Those claims are listed in Exhibit 3.

52.     The patients for whom CMIS submitted claims for reimbursement are members of plans that exclude payment for "charges which you [the plan member] are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan" and "for charges which would not have been made if the person had no insurance."

53.     The plans covering CMIS patients provide coverage only for "expenses incurred by or on behalf of a person for" for medically necessary services.

54.     For all or most of the claims CMIS submitted to Cigna, CMIS waived all or part of the deductible, coinsurance, and other amounts that the plan member was required to pay under the terms of his or her plan.

130927459v1 0963977

55.     As a result, the plan members had no obligation to pay any of CMIS's charges for its services. Because the plan members did not incur any "Covered Expenses" for CMIS's services, Cigna and the plans had no obligation to pay any of the charges CMIS submitted for its services.

56.     Notwithstanding the plan terms that exclude and limit coverage for expenses that the plan members are not obligated to pay, CMIS, through counsel, has submitted a demand to Cigna for more than $1.6 million, over and above the reimbursements Cigna has already been deceived into making.

57.     An actual and justiciable controversy exists between Cigna and CMIS over whether any moneys are due CMIS for the services it allegedly provided to the plan members on the dates of service shown in Exhibit 2.

58.     The Declaratory Judgment Act, 28 U.S.C.A. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

59.     Pursuant to the Act, Cigna respectfully requests that the Court enter a judgment declaring that:

        a.     CMIS has waived or forgiven all or part of the amounts that the plan members were required to pay under the terms of their plans for the services for which CMIS sought reimbursement;

        b.     CMIS's fee-forgiving practices resulted in the plan members' incurring no expenses for GASC's services;

130927459v1 0963977

c.     the plans do not cover any part of CMIS's charges because they provide coverage only for expenses actually incurred by the plan members;

d.     CMIS has no right to reimbursement, payment, or other consideration from Cigna, Cigna-administered benefit plans, or Cigna plan members for any services or charges associated with the claims listed in Exhibits 2 and 3; and

e.     CMIS has no right to reimbursement, payment, or other consideration from Cigna, Cigna-administered benefit plans, or Cigna plan members for any services or charges provided to the plan members;

### COUNT II

**Recoupment of Overpayments Received by CMIS**

60.     Cigna incorporates the allegations contained in paragraphs 1-49 above.

61.     Cigna, acting as a fiduciary of the plans that it insures and administers, seeks to recover payments made by the plans to CMIS.

62.     On information and belief, before each service for which CMIS submitted a claim to Cigna, CMIS took an assignment of the patient's benefits under his or her plan. Each time CMIS submitted a claim listed in Exhibit 2, the claim indicated that CMIS had taken an assignment of the patient's plan benefits.

63.     By taking an assignment of its patients' benefits, CMIS stepped into the patients' shoes, and became subject to the obligations set forth in the patient's plan with regard to the services it provided to the patient.

64.     The plans covering the patients listed in Exhibit 2 contain provisions giving Cigna the right to recover overpayments to medical providers. The sample plan document at Exhibit 1 provides that when "an overpayment has been made by Cigna, Cigna will have the right at any

15

time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future claim payment." (Plan document at 42).

65.     The payments that Cigna was induced to make to CMIS by means of the deceptive claims listed in Exhibit 2 constitute overpayments under the terms of the plans. Because CMIS systematically waived or deeply discounted its patients' out-of-network cost shares, the patients did not incur any "Covered Expenses" for the services they received, and therefore no payments or benefits were due for the services CMIS allegedly rendered.

66.     In reliance on the fraudulent claims CMIS submitted for treating Cigna plan members, Cigna paid CMIS roughly $800,000 in benefits under its patients' plans from 2010 through the present.

67.     These payments belong in good conscience to Cigna and the plans because, as a result of CMIS's fee-forgiving practices, no reimbursement was due to CMIS under the terms of the plans.

68.     It would be unfair and unjust for CMIS to retain reimbursements that were not due under the terms of its patients' plans.

69.     Therefore, CMIS is obligated, based on principles of unjust enrichment and restitution, and based on the plans' overpayment provisions, to return to Cigna, as agent for the plans it administers, all reimbursements it has received for services rendered to patients under those plans.

70.     With regard to benefit plans governed by ERISA, Cigna, as the fiduciary of the plans, can assert this claim under ERISA § 502(a)(3). With regard to benefit plans governed by state law, Cigna can assert this claim under state law.

130927459v1 0963977

## COUNT III

### Fraudulent Misrepresentation

71.     Paragraphs 1-49 are incorporated by reference as if set forth fully herein.

72.     CMIS submitted claims to Cigna seeking reimbursement for treating the patients listed in Exhibit 2. CMIS submitted a claim for each patient shortly after each date of service shown for that patient in Exhibit 2. The statements and information contained in the claims regarding CMIS's charges were materially false because they grossly overstated its actual charges for each patient's services.

73.     CMIS knew that the claims reflected false and inflated charges that CMIS did not actually expect or intend to collect because it was waiving or discounting patient cost shares.

74.     At the time CMIS submitted each claim to Cigna, CMIS knew that the statements made in the claim about its charges were false because CMIS knew that it was going to waive, discount, or otherwise fail to collect the plan member's responsibility for the allowed charge for its services.

75.     CMIS concealed and failed to disclose material information regarding its practice of waiving plan members' out-of-network deductibles, coinsurance, and other cost shares.

76.     CMIS submitted the claims to Cigna with the intent to defraud Cigna by inducing Cigna to rely on the false representations by paying its false and inflated charges.

77.     Cigna must rely on claims submitted by providers, when determining how much of the provider's charge is covered by the plan and how much the patient owes in cost shares. CMIS's representations are therefore material.

78.     Cigna reasonably relied on such material false statements and omissions and paid the false and misleading claims submitted by HDL, resulting in compensable injury to Cigna.

17

79.     When Cigna's investigator asked CMIS's office manager for information and records about its billing practices, CMIS refused to produce the materials and sought to conceal its billing practices.

80.     In reliance on CMIS's fraudulent claims, Cigna paid CMIS roughly $800,000 in plan benefits to which CMIS had no entitlement.

<u>COUNT IV</u>

**Negligent Misrepresentation**

81.     Cigna incorporates the allegations in paragraphs 1-49 above.

82.     CMIS submitted claims to Cigna regarding services that it provided to the Cigna plan members listed in Exhibit 2.  CMIS did so in the course of its business for the purpose of collecting payments for its services under the terms of the plans Cigna administers.

83.     CMIS supplied the information contained in the claims in the course of its business. CMIS did so for the guidance of others Cigna and the plan in their business transactions—namely, in the transaction in which they determined the amount to reimburse CMIS under the terms of the plans for the treatments it rendered.

84.     In submitting these claim, CMIS falsely overstated the charges for its services. CMIS did not intend to collect the actual amounts shown on the claims it submitted to Cigna.

85.     When it submitted the claims, CMIS did not identify the actual amounts that it intended to collect from the Cigna plan members. By failing to disclose this information, CMIS failed to exercise reasonable care in communicating information regarding its charges to Cigna.

86.     In reliance on the claims submitted by CMIS, Cigna processed the claims and paid reimbursement to CMIS based upon the overstated charges contained in the claims CMIS submitted.

130927459v1 0963977

87. Cigna must rely on claims submitted by providers, for, among other things, determining how much of the provider's charge is covered by the plan and how much the patient owes in cost-sharing responsibility. CMIS's representations are therefore material

88. Cigna reasonably relied on such material false statements and omissions and paid the false and misleading claims submitted, resulting in compensable injury to Cigna.

89. When Cigna's investigator asked CMIS's office manager for information and records about its billing practices, CMIS refused to cooperate and sought to conceal its billing practices.

90. In reliance on CMIS's inaccurate claims, Cigna paid CMIS roughly $800,000 in plan benefits which CMIS had no entitlement to. Cigna therefore has suffered significant damages as a result of CMIS's misleading representations.

## COUNT V

### Violation of the Illinois Consumer Fraud Act

91. Cigna incorporates the allegations in paragraphs 1-49 above.

92. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, protects consumers and businesses against fraud, unfair methods of competition, and other unfair and deceptive business practices.

93. CMIS engages in unfair and deceptive billing practices that violate the ICFA. The claims CMIS submitted to Cigna on behalf of the plans are deceptive because they reflect charges in the form of patient cost shares that CMIS does not intend or expect to collect. CMIS's practice of waiving or discounting patient cost shares is unfair because it gives CMIS an unfair advantage over in-network providers who do not waive patient cost shares. This practice also drives up healthcare costs to the sponsors of the plans, and it undermines Cigna's ability to offer

130927459v1 0963977

employers robust networks of participating providers, since providers will be less likely to join Cigna's network if plan members do not have incentive to choose in-network providers.

94.     CMIS submitted claims to Cigna seeking reimbursement for treating the patients listed in Exhibit 2. CMIS submitted a claim for each patient shortly after each date of service shown for that patient. CMIS did so in the course of its business for the purpose of collecting payments for its services under the terms of the plans Cigna administers. Thereafter, CMIS waived, discounted, or failed to collect the plan members' responsibility for the allowed charge for its services. As a result, each claim CMIS submitted to Cigna is deceptive and unfair for the reasons set forth in the preceding paragraph.

95.     In reliance on the false and misleading claims submitted by CMIS, Cigna processed the claims and paid reimbursement to CMIS based upon the overstated charges contained the claims CMIS submitted. Every time Cigna paid a claim based upon an overstated charge for CMIS's services, Cigna sustained an injury proximately caused by CMIS's unfair and deceptive business practices.

96.     CMIS submitted the claims with the intention that Cigna rely on the claims by reimbursing CMIS for the inflated and inaccurate charges shown.

97.     Cigna must rely on claims submitted by providers, for, among other things, determining how much of the provider's charge is covered by the plan and how much the patient owes in cost-sharing responsibility.

98.     When Cigna's investigator asked CMIS's office manager for information and record about its billing practices, CMIS refused to cooperate and sought to conceal its billing practices.

20

99.     In reliance on CMIS's deceptive and unfair claims, Cigna paid CMIS roughly $800,000 in plan benefits to which CMIS had no entitlement.

## JURY DEMAND

### As to Non-ERISA Claims Only

100.     With respect to Cigna's non-ERISA claims, Cigna hereby demands a trial by jury.

## PRAYER FOR RELIEF

101.     Based on the above, Cigna prays that the Court enter a judgment awarding the following:

     a.     a declaratory judgment that CMIS has waived all or part of the cost shares owed by the patients listed in Exhibit 2 and therefore it is not entitled to reimbursement under the terms of Cigna-administered plans for the services allegedly provided to the plan members;

     b.     recoupment of all monies paid to CMIS on claims for reimbursement submitted to Cigna;

     c.     monetary damages for all harm suffered as a result of CMIS's conduct;

     d.     exemplary and punitive damages;

     e.     pre-judgment and post-judgment interest;

     f.     reasonable attorneys' fees incurred;

     g.     costs of court; and

     h.     such other and further relief to which they may show themselves entitled in law or equity.

130927459v1 0963977

Respectfully submitted:

Cigna Health and Life Insurance Company and
Connecticut General Life Insurance Company

By:    s/  Peter E. Pederson
            One of its attorneys

Daniel K. Ryan
Peter E. Pederson
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois  60601
(312) 704-3000 Phone
(312) 704-3001 Fax
dryan@hinshawlaw.com
ppederson@hinshawlaw.com

130927459v1 0963977