IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 1:14-cv-08777 |
| vs. | ) ) | |
| Southwest Surgery Center, LLC, d/b/a Center for Minimally Invasive Surgery, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

The defendant, Southwest Surgery Center, LLC, d/b/a Center for Minimally Invasive Surgery ("CMIS"), by its attorneys, submits this memorandum in support of it motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**INTRODUCTION AND BACKGROUND**

Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively "Cigna") brought a complaint seeking recovery for all amounts paid to CMIS, an out-of-network provider, for surgical services on 97 claims. According to Cigna, CMIS engages in a fraudulent scheme of waiving patient cost shares and subsequently inflating its billed charges to attract more patients, to Cigna's detriment. (Compl. ¶¶ 1-2.) Cigna claims this fraud affected claims governed by both ERISA and non-ERISA plans, but does not identify which plans are at issue, or which claims relate to which type of plan. In fact, Cigna's allegations and exhibits show that Cigna has not even been harmed because CMIS's billed charges have no effect on the reimbursement rate and, furthermore, for any ERISA claim the plans and not Cigna

paid the claims. In addition, Cigna's ERISA and non-ERISA claims are barred by ERISA jurisprudence and common law, respectively,

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires the Court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). When determining subject matter jurisdiction, this Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (quoting *Capitol Leasing Co. v. Federal Deposit Ins. Co.*, 999 F.2d 188, 191 (7th Cir. 1993)).The burden of proof in a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus*, 322 F.3d at 946. Rule 12(b)(6) requires dismissal where a complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is insufficient to offer a "formulaic recitation of the elements of a cause of action" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

## ARGUMENT

### I. CIGNA DOES NOT HAVE ARTICLE III STANDING BECAUSE IT HAS NOT BEEN DAMAGED.

To demonstrate Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to … the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464,

472 (1982) (Article III requires the plaintiff to show that he personally has suffered some actual or threatened injury). Even if the injury is shared by other possible litigants, "the plaintiff still must allege a distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). This traditional injury requirement is not relaxed in the ERISA context. *See Patten v. Northern Trust Co.*, 703 F. Supp. 2d 799, 806 (N.D. Ill 2010) (Article III standing is a "threshold matter" plaintiff must establish before bringing ERISA claim). Abstract injuries such as a negative effect on contractual expectations or on the relationship between patients and providers does not constitute the "distinct and palpable" harm necessary to show standing." *AMA v. United Healthcare Corp.*, 2007 U.S. Dist. LEXIS 44196, *61 (S.D.N.Y. June 15, 2007). Cigna must allege it has personally suffered an injury-in-fact.

Cigna claims CMIS waives patients' cost-shares and inflates its charges, increasing costs for health benefit plans. (Compl. ¶ 9.) But, Cigna's own allegations show that it has not been damaged. The sample benefits description attached to Cigna's complaint says that the plan will pay 70% of the Maximum Reimbursable Charge ("MRC") for out-of-network medical charges. (Compl. Ex. 1, p. 11.) MRC is defined as the lesser of (1) "a provider's normal charge for a similar service or supply" or (2) a Cigna-developed schedule based on either Medicare or like providers in the same geographical area. (*Id.* p. 60.) This establishes a maximum flat fee, regardless of how much a provider charges (if a provider charges more than the schedule, the plan will only pay 70% of the schedule). (*Id.*) The plan pays less than this maximum if a provider's normal charges are less than the scheduled amount. (*Id.*)

CMIS's alleged practices can result in damage only if CMIS normally charges *less* than the plan's schedule. If CMIS normally charges the same or more than the schedule, any inflation in CMIS's charges to Cigna would be irrelevant because the plan's maximum reimbursement is

capped at 70% of the schedule. But, Cigna does not allege that CMIS normally charges less than the schedule, Cigna alleges the opposite: that CMIS charges more than its negotiated in-network providers' rates or even the market rate. (Compl. ¶ 35.)

An example is instructive. Suppose Cigna's schedule sets the charge at $10 for a given procedure. The most the plan will reimburse an out-of-network provider for that procedure, then, is $7 (70% of the schedule). (Compl. Ex. 1, pp. 11, 60.) The patient is responsible for the remaining $3. If CMIS normally charges $12 for that procedure, the plan will still only reimburse CMIS $7 because 70% of $10 is less than 70% of $12. If CMIS normally charges $8 for the procedure, however, the plan will reimburse $5.60 (70% of $8).

According to Cigna, CMIS inflates its charges while waiving patient cost shares. (Compl. 3.) If Cigna is right, this only increases the plans' costs if CMIS's normal charges were *less* than the schedule—if CMIS's charges were normally higher and are even higher now, the plan would still only pay $7. Cigna never alleges, however, that CMIS typically charges less than Cigna's own schedule and it would be hard to imagine such an allegation given Cigna's consistent refrain that CMIS charges *more* than the typical provider. This is true regardless of whether CMIS charges the patient their full cost-share, a portion of it, or no cost-share at all because CMIS's reimbursement is tied to Cigna's own flat fee.[1]

Most importantly, the sample plan attached to the complaint is self-funded by Infor (US), Inc., and not Cigna (Compl. Ex. 1, p. 5), and says "(CIGNA) PROVIDES CLAIM ADMINISTRATION SERVICES TO THE PLAN, BUT CIGNA DOES NOT INSURE THE BENEFITS DESCRIBED." *Id.*; *see also Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) (to the extent exhibits contradict allegations in

---

[1] In fact, Cigna does not allege that the patients at issue could have paid their cost shares (and in one instance affirmatively alleges that the patient disputed paying it). (Compl. 42.) If the patients could not pay their cost shares, it is hard to see what effect CMIS's alleged waiver has at all.

the complaint, the exhibits control). Any alleged overpayment would have been made by the *plan*, not Cigna. According to the only evidence Cigna has presented, it has not been damaged.[2]

## II. CIGNA DOES NOT HAVE STANDING UNDER ERISA.

Cigna must also establish statutory standing under ERISA. *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908 (N.D. Ill. 2012) ("[S]atisfying Article III's requirements does not automatically confer statutory standing[,] nor is statutory standing 'a substitute for Article III standing'") (citing *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 364 (N.D. Ill. 2010) (internal citations omitted). In determining whether a plaintiff has statutory standing, "a court considers whether Congress, via a statutory provision, 'has accorded this *injured* plaintiff the right to sue the defendant to redress his injury.'" *Id.* (emphasis in original). Because it is jurisdictional, Cigna bears the burden of establishing its standing. *Warth*, 422 U.S. at 518. Cigna does not have standing under ERISA because it is not acting as a fiduciary and has not alleged any ERISA plan terms imposing duties on CMIS.

### A. Cigna is not Acting as an ERISA Fiduciary.

Only participants, beneficiaries and fiduciaries can seek relief pursuant to ERISA § 502(a)(3). 29 U.S.C. § 1132(a)(3); *Chicago v. Reinke Insulation Co.*, 1995 U.S. Dist LEXIS 8727, *8 (N.D. Ill. June 22, 1995) (no jurisdiction where claim was "not brought by a plan 'participant, beneficiary or fiduciary' as required"). Cigna attempts to satisfy this requirement by claiming it is a "fiduciary" of an undisclosed number of ERISA plans. (Compl. ¶ 16.) To qualify as a fiduciary, however, Cigna must show it has discretionary authority over management or

---

[2] Cigna claims CMIS inflated its charges, but it admits CMIS was paid less than half of its billed charges. (Compl., Ex. 2 (showing payment of $787,696.03 on $2,031,474.95 in billed charges).) This partial payment already represents a discount of the allegedly inflated billed charges. Now, Cigna seeks recovery of the rest of the money, apparently claiming that CMIS is not entitled to *anything* for the medical services it provided. (Compl. ¶ 101.) Cigna's own exhibit, however, shows that CMIS, at the very least, is entitled to 70% of the MRC for each surgery. (Compl., Ex. 1, p. 11.)

disposition of plan assets, renders investment advice over plan property, or has discretionary authority in the administration of that plan. 29 U.S.C. § 1002(21)(A). Cigna does not satisfy this definition because it (a) does not allege any facts supporting its conclusion that it is an ERISA fiduciary and (b) seeks recovery for itself instead of the plans.

It is unclear for which plans Cigna claims it is a fiduciary because it does not identify the plans or claims to which they pertain. Compl. ¶ 70; *Hintergerger v. Catholic Health Sys.*, 2012 U.S. Dist. LEXIS 37066 (W.D.N.Y. Jan. 16, 2012) (dismissing complaint where plaintiff failed to identify ERISA plans at issue). Besides, Cigna does not describe the duties or tasks it performs for each plan. With the exception of one benefits summary (which is not a plan), Cigna has not identified *any* ERISA plans over which it exercises discretionary authority. Cigna merely concludes it is a "fiduciary" because it is "granted discretionary authority over the payment of benefits under employer-sponsored health benefit plans." (Compl. ¶ 16.) This is not enough to establish Cigna as an ERISA fiduciary. *See Iqbal*, 556 U.S. at 678 (court need not consider allegations that are nothing more than "legal conclusions" or "naked assertions").

Even if Cigna *could* fit the definition of an ERISA fiduciary, its allegations make clear Cigna is not acting as a fiduciary here because it is seeking recovery for itself. *See Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004) (to assess whether an entity is an ERISA fiduciary, the court must decide "whether [that] person is a fiduciary *with respect to the particular activity at issue*") (emphasis added); *see also Caremark, Inc.*, 474 F.3d at 471-472, 475 (entity may have been fiduciary for some purposes, but was not fiduciary for purposes alleged in the complaint).

Despite claiming it is a fiduciary for an unspecified number of ERISA plans, and despite its own exhibit showing that the *plan*, and not Cigna, paid CMIS, Cigna repeatedly seeks

recovery for itself and not the plans. (Compl. ¶¶ 10, 29, 66, 69, 78, 80, 88, 90, 99, Ex. 1, p. 5.)[3] As such, Cigna is not acting as a fiduciary. *See* 29 U.S.C. § 1002(21)(A); *Pegram v. Hedrich*, 530 U.S. 211, 225-26 (2000) ("[ERISA] does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead [ERISA] defines an administrator … as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan.") Cigna can only bring a claim to enforce ERISA plan terms as a fiduciary pursuant to ERISA §502(a)(3) if it seeks recovery for the plan itself. *Horizon Blue Cross Blue Shield of New Jersey v. East Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568, 575 (D. N.J. 2009) (the question is whether the plaintiff is acting as a fiduciary in proceeding with its claims).

Because Cigna has not sufficiently alleged it is a fiduciary seeking recovery for the ERISA plans, it lacks statutory standing and its ERISA claims must be dismissed. *Giardono v. Jones*, 867 F.2d 409, 411 (7th Cir. 1989) (affirming dismissal of ERISA claim for lack of statutory standing); *Leo v. Laidlaw, Inc.*, 38 F. Supp. 2d 675, 679 (N.D. Ill. 1999) (dismissing for lack of ERISA standing).

### B. Cigna has Not Alleged that any Plan Requires CMIS to Collect Cost Shares.

The complaint should also be dismissed pursuant to Rule 12(b)(6) because Cigna does not show more than a "sheer possibility that [CMIS] acted unlawfully" and has therefore not stated a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Not only has Cigna failed to identify the ERISA and non-ERISA plans at issue, it has not identified any provisions or plan documents imposing an obligation on CMIS to collect co-pays, deductibles, or coinsurance. Nor has Cigna shown that CMIS's alleged actions caused Cigna or even any plans damages. *See* Section I, *supra*. Cigna's real complaint is that any alleged waiver of deductibles or patient

---

[3] Cigna has not identified which plans are ERISA pans and which are Cigna-insured, but it seeks personal recovery for *all* claims regardless of which type of plan is implicated. (Compl., Ex. 2.)

shares by CMIS frustrates Cigna's business model of discouraging patients from seeking services from out-of-network providers. Cigna's remedy lies in the marketplace and not in the judicial system.

### III. CIGNA HAS NOT ESTABLISHED SUBJECT MATTER JURISDICTION.

Because all of Cigna's claims related to ERISA plans must be dismissed for lack of standing, only an unspecified number of claims related to Cigna-insured plans remain. These claims, of course, do not implicate federal question jurisdiction pursuant to 28 U.S.C. § 1331, leaving diversity jurisdiction as Cigna's only basis to be before this Court.

Cigna, however, does not provide any indication as to how many non-ERISA claims it asserts or each claim's amount.[4] This is insufficient to establish the $75,000 requirement of 28 U.S.C. § 1332. *See Lewis v. Weiss*, 631 F. Supp. 2d 1063, 1066 (N.D. Ill. 2009) (party asserting federal jurisdiction "must do more than 'point to the theoretical availability of certain categories of damages.' General assertions of damages, unsupported by any facts or evidence of specific injury, do not suffice") (citation omitted)). Cigna's claims should be dismissed for lack of subject matter jurisdiction. *Id.* (granting dismissal for failure to show adequate amount in controversy).[5]

### IV. COUNT II (RECOUPMENT) IS BARRED BY ERISA AND STATE LAW.

#### A.   Cigna Cannot Recover Funds Pursuant to ERISA § 502(a)(3).

In Count II, Cigna seeks "recoupment" of all amounts paid to CMIS based on "principles of unjust enrichment and restitution." (Compl. ¶¶ 60, 69.) For the ERISA plans (which Cigna fails to identify), Cigna seeks recoupment pursuant to ERISA § 502(a)(3). (Compl. ¶ 70.)

---

[4] CMIS assumes Cigna brings some non-ERISA claims because its jury demand implies they exist. (Compl. ¶ 100.)
[5] In fact, Cigna has not even shown that the total of its ERISA and non-ERISA claims meets the $75,000 requirement. Cigna alleges CMIS was paid nearly $800,000 for the claims but does not explain whether that $800,000 was in excess of the MRC CMIS was rightly owed as an out-of-network provider. Cigna's complaint is too deficient to establish the amount in controversy and should be dismissed.

ERISA Section 502(a)(3) only authorizes civil actions to recover injunctive or "equitable" relief. 29 U.S.C. § 1132(a)(3). The Supreme Court has explained that "'equitable' relief must mean *something* less than *all* relief" and is properly limited to "those categories of relief that were *typically* available in equity…" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002) (emphasis in original) (citations omitted). As in *Great-West*, Cigna seeks "the imposition of personal liability for the benefits they conferred" on CMIS, and therefore seeks legal, rather than equitable, relief. *Id.* at 214 ; *see also* Compl. at ¶ 101 (characterizing the amounts sought by Cigna as "damages"). Such an action is not authorized by ERISA § 502(a)(3). *Great-West*, 534 U.S. at 214.; *see also Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 687-88 (7th Cir. 2003) (claim in equity may only exist if there is an identifiable *res* or the plaintiff can trace its property to a specific fund of money).[6]

The only way for Cigna to bring an ERISA § 502(a)(3) recoupment claim is if (1) CMIS was a party to a plan that authorized recoupment and (2) the funds sought were segregated by CMIS and remained in clearly separate, identifiable accounts as opposed to CMIS's general assets. *See Sereboff v. Mid. Atl. Med. Servs.*, 547 U.S. 356, 363-65 (2006). Perhaps recognizing these restrictions, Cigna's complaint alleges that the sample benefits description (that may or may not apply to Cigna's claims) authorizes Cigna to recoup payments from providers (Compl. ¶ 64) and that CMIS is a "beneficiary" because it took assignments of its patients' benefits. (Comp. ¶ 63.) These legal conclusions, without more, are insufficient. *Iqbal*, 556 U.S. at 678. Furthermore, the complaint is devoid of allegations that the funds Cigna seeks are particularized or identifiable. *See Union Labor Life Ins. Co. v. Olsten Corp. Health & Welfare Benefit Plan*, 617 F. Supp. 2d 131, 135-36 (E.D.N.Y. 2008) (claim was not equitable because plaintiff "failed

---

[6] It is equally clear that Cigna cannot recover punitive damages pursuant to its ERISA claims. *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 627 (7th Cir. 1987).

to identify any particular fund in defendants' possession, distinct from its general assets, from which it seeks to be reimbursed"). Accordingly, Cigna cannot recoup its damages pursuant to ERISA § 502(a)(3).

### B. Cigna's Recoupment Claim Amounts to an Improper Adverse Benefit Determination.

Even if its claim was equitable, Cigna has not complied with the very statute it invokes. Cigna's recoupment attempt falls within ERISA's definition of an "adverse benefit determination." *See* 29 C.F.R. § 2560.503-1; *Pa. Chiropractice Ass'n v. Blue Cross Blue Shield Ass'n*, 2014 U.S. Dist. LEXIS 41749, *49-50 (N.D. Ill. Mar. 28, 2014). Any recoupment, therefore, triggers the administrative procedure outlined in ERISA including timely notice, the right to appeal, and a "full and fair review" of the decision. 29 C.F.R. §2560.503-1(h)(1). Cigna claims CMIS is subject to ERISA (Compl. ¶ 63) but has not alleged that Cigna provided *any* of these procedural safeguards.

### C. Cigna's Recoupment Claim is Barred by 215 ILCS 5/368d.

Cigna's recoupment attempt for non-ERISA claims is similarly barred by 215 ILCS 5/368d, *et seq.*. Under the statute, an insurer may not request recoupment more than eighteen months after the original payment was made. 215 ILCS 5/368d(c). According to Cigna's pleadings, this bars recoupment on all of its claims. (Compl., Ex. 2.)[7] Cigna's fraud allegations do not save its claim because they are not pleaded with particularity and no court or tribunal has made a formal finding of fraud. 215 ILCS 5/368d(c)(1).

In addition to being barred by the statute of limitations, Cigna has not complied with the statute's administrative requirements in that it does not allege it provided CMIS with any

---

[7] The most recent service date is August 9, 2012. (Compl., Ex. 2). Unless it violated the Illinois Prompt Pay Act, 215 ILCS 5/368a, Cigna would have paid this claim within thirty days. Over twenty-seven months have elapsed since the last possible date of payment on the most recent claim.

explanation of the recoupments including the names of patients, the dates of service, the service codes or service descriptions, the recoupment amounts, the reason for recoupment, and an opportunity to appeal. 215 ILCS 5/368d(a).

## V. CIGNA'S COMMON-LAW CLAIMS ARE BARRED.

Cigna's complaint fails to identify how many and which of the claims at issue relate to ERISA plans as opposed to Cigna-insured non-ERISA plans. Cigna simply implies there are both types of plans at issue by invoking ERISA § 502(a)(3) in some parts of its complaint yet seeking a jury for non-ERISA claims. (Compl. ¶¶ 12, 70, 100.) Even if the Court finds that Cigna has Article III standing with respect to the non-ERISA claims, Cigna's common-law claims are barred as set forth below.

### A. Cigna Has Not Sufficiently Pleaded Fraud.

In support of Count III, Cigna must plead "all averments of fraud or mistake" with particularity, Fed. R. Civ. P. 9(b), and must allege the "who, what, where, when and how" of the alleged fraudulent activity. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Rogers v. Baxter Int'l Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006) (applying Rule 9(b)'s heightened pleading standard to ERISA claims that "amounted to allegations of fraud"). Cigna's complaint falls far short of Rule 9(b)'s requirements.

Cigna has supposedly been investigating CMIS since Spring 2012 (Compl. ¶ 38), yet fails to allege the results of that investigation save a lone conversation with a plan member (Compl. ¶ 39) and some letters supposedly sent but not attached to the Complaint. (Compl. ¶¶ 41, 43.) The only discussion of actual patients shows that three out of six *were* billed by CMIS for their cost share. (Compl. ¶ 42.) Cigna's exhibits are of no help because they merely list service dates and CMIS's charges, with no identification of the purported "proper" charges. (Compl. Exs. 2, 3.)

Cigna does not even identify the number of plans, whether they are ERISA or non-ERISA, or which claims are associated with which plans. Instead, Cigna attaches a single "sample plan document" without even alleging whether that document applies to any of the claims.

Cigna's deficiencies are strikingly similar to a recent Central District of Illinois case in which the plaintiff complained that a defendant provider engaged in a "fraudulent scheme" of "waiving the co-insurance payment fees, and correspondingly inflating the charges they sent to [the payer]" to attract more members and deny the in-network provider its exclusivity agreement with the payer. *OSF Healthcare Sys. v. Banno*, 2008 U.S. Dist. LEXIS 100230, *4 (C.D. Ill. Dec. 11, 2008). The *Banno* court found that the plaintiff did not satisfy Rule 9(b)'s particularity standard because it failed to allege that defendants had a legal duty to charge or collect co-payments from the plan's members and, as with Cigna's failure to identify the plans at issue, failed to allege who was affected by the misrepresentations. *Id.* at *9-10. The court also held that a mere statement that the defendant's charges were in excess of the discounted in-network provider's charges was not enough absent evidence of the actual disparity between the charges. *Id.* at *10. The *Banno* court dismissed the plaintiff's fraud claim.

**B.     Cigna's Negligent Misrepresentation Claim is Barred by the *Moorman* Doctrine.**

In Count IV, Cigna seeks recovery of "roughly $800,000" due to CMIS's purported negligent misrepresentations. (Compl. ¶¶ 81-90.) This claim falls "squarely within the definition of a pure economic loss" and is barred by *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 91 (1982). *See First Place Bank v. Skyline Funding, Inc.*, 2011 U.S. Dist. LEXIS 22349, *9-10 (N.D. Ill. March 4, 2011).

Cigna tries to avoid this result by alleging "CMIS supplied the information contained in the claims in the course of its business. CMIS did so for the guidance of others [sic] Cigna and

the plan in their business transactions…" (Compl. ¶ 83.) This legal conclusion, without factual support, is an apparent attempt to trigger an exception to the *Moorman* Doctrine which "allows that economic loss may be recovered when 'one who is in the business of supplying information for the guidance of others in their business transactions makes negligent misrepresentations.'" *First Place Bank*, 2011 Dist. LEXIS 22349 at *9-10 (citing *Moorman*, 91 Ill. 2d at 88-89.)

CMIS, however, is in the business of supplying surgical services, not information—Cigna's recitation of the magic language does not change that fact. *Hartford Fire Ins. Co. v. Henry Bros. Construction Mgmt. Servs., LLC*, 877 F. Supp. 2d 614, 619 (N.D. Ill. 2012) ("claim that a party is in the business of providing information for the guidance of others states a legal conclusion and must be supported by well-pleaded factual allegations"). In fact, Cigna affirmatively pleads that CMIS is *not* primarily in the business of supplying information, but is instead "an outpatient surgical center." (Compl. ¶ 6); *see also First Place Bank*, 2011 U.S. Dist. LEXIS 22349 at *11 (*Moorman* exception not found where complaint alleged "primary business was originating loans, not providing information"); *Landlock Natural Paving, Inc. v. Desin L.P.*, 2013 U.S. Dist. LEXIS 129981, *12 (N.D. Ill. Sept. 11, 2013) (complaint alleged defendant was a manufacturer, supplier and seller of soil products, not a supplier of information).

Even without Cigna's allegation, it is clear that any exchange of information by CMIS is ancillary to the provision of its services. *Hartford Fire*, 877 F. Supp. 2d at 620. Courts addressing this issue have held that a defendant is not in the business of supplying information if the end product of the relationship between the plaintiff and defendant is something tangible which can readily be described in a contract. *Id.* As Cigna concedes, surgical services can readily be described in contracts and Cigna routinely does so with its in-network providers. (Compl. ¶ 3.) Cigna's negligent misrepresentation claim is barred by the *Moorman* Doctrine.

D.     **Cigna Lacks Standing under the ICFA.**[8]

In Count V, Cigna attempts to bring a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA"), 815 ILCS 505/1, *et seq.* Count V must be dismissed, however, because Cigna has not pleaded its claim with particularity and has not sufficiently alleged the elements of the claim including actual damage to Cigna proximately caused by CMIS.

To bring a private cause of action under the ICFA, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; (5) proximately caused by the deception. *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008). The claim must be pleaded with particularity and must meet Rule 9(b)'s pleading standards. *Id.; see also Thrasher-Lyon*, 861 F. Supp. 2d at 909 ("a plaintiff 'must allege with particularity the 'who, what, when, where and how' of the fraud or misrepresentation'"). Cigna invokes the Act but has not pleaded the purported fraud or misrepresentation with sufficient particularity. *See* Section V.A., *supra*.

Cigna also fails to allege any effect on consumers. Cigna does not allege, nor can it, that answering CMIS's verification calls somehow makes it a "consumer" of CMIS's medical services. 815 ILCS 505/1(e); *Thrasher-Lyon,* 861 F. Supp. 2d at 910. Instead, "[w]here the dispute involves two businesses who are not consumers, the proper test is … whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534 (2d Dist. 1989). But Cigna does not mention any effect on consumers.

---

[8] Cigna demands a trial by jury on all non-ERISA claims but, as explained in *Martin v. Heinold Commodities, Inc.*, a cause of action under the ICFA does not provide a right to a jury trial. 163 Ill. 2d 33, 71-77 (1994).

Instead, it focuses on its own recovery and how CMIS's actions are "unfair" to Cigna. (Compl. ¶ 93.)

Cigna's ICFA claim also fails because Cigna has not alleged it was damaged, *see* Section I, *supra*, and, as such, has not pleaded the fourth or fifth elements of a cause of action under the IFCA. *Thrasher-Lyon*, 861 F. Supp 2d at 912-13; *see also Priebe v. Autobarn*, 240 F.3d 584, 589 (7th Cir. 2001) (plaintiff must plead damages to state a claim under ICFA).

## CONCLUSION

For the reasons stated above, CMIS respectfully requests that the Court dismiss all counts of Cigna's Complaint with prejudice.

Respectfully submitted,

By:   s/ Douglas L. Prochnow
     One of the Attorneys for Defendant
     Southwest Surgery Center, LLC, d/b/a
     Center for Minimally Invasive Surgery

Douglas L. Prochnow
John A. Roberts
William R. Andrichik
Colin O'Donovan
Edwards Wildman Palmer LLP
225 W. Wacker Drive, Suite 2800
Chicago, IL 60606-1229
Phone: (312) 201-2765
Fax: (312) 201-2500

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, affirms that on December 22, 2014, he filed an electronic copy of the foregoing Memorandum in Support of Motion to Dismiss using the CM/ECF system which will send notification of such filings to counsel of record.

                                                  s/ William R. Andrichik

                                                  Douglas L. Prochnow
                                                  John A. Roberts
                                                  William R. Andrichik
                                                  Colin O'Donovan
                                                  Edwards Wildman Palmer LLP
                                                  225 W. Wacker Drive, Suite 2800
                                                  Chicago, IL 60606-1229
                                                  (312) 201-2000
                                                  Fax: (312) 201-2555