**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY,** | ) ) ) ) | |
| | ) | **Case No. 14-cv-08777** |
| **Plaintiffs-Counterclaim-Defendants,** | ) ) | |
| | ) | **District Judge John Robert Blakey** |
| **v.** | ) ) | **Magistrate Judge Brown** |
| | ) | |
| **SOUTHWEST SURGERY CENTER, LLC,** d/b/a **Center for Minimally Invasive Surgery,** | ) ) | |
| | ) | |
| **Defendant-Counterclaimant.** | ) | |

<u>**MEMORANDUM OF LAW IN OPPOSITION TO CMIS'S MOTION TO DISMISS**</u>

Daniel K. Ryan
Peter E. Pederson
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
dryan@hinshawlaw.com
ppederson@hinshawlaw.com
(312) 704-3000 Phone
(312) 704-3001 Fax

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

RESPONSE TO CMIS'S RULE 12(b)(1) ARGUMENTS ....................................... 2

      I.    Cigna has Article III standing. ................................................ 2

           A.    Cigna has standing to seek relief under ERISA § 502(a)(3)....................... 3

           B.    Cigna has standing to seek relief under the Declaratory Judgment Act. .................................................................................................. 5

           C.    CMIS's arguments are flawed. ................................................ 6

      II.    CMIS's "statutory standing" argument is misguided. ........................... 9

      III.    The Court has diversity jurisdiction.................................................... 12

RESPONSE TO CMIS'S RULE 12(b)(6) ARGUMENTS ....................................... 13

      I.    Cigna has stated a claim to recoup the overpayments under ERISA § 502(a)(3). ........................................................................................ 13

           A.    The exhaustion doctrine and Illinois law do not bar Cigna's ERISA claim........................................................................................... 16

      II.    Cigna has stated a claim for fraud..................................................... 18

      III.    Cigna has stated a claim for negligent misrepresentation..................... 19

      IV.    Cigna has stated a claim under the Illinois Consumer Fraud Act ("ICFA"). ....... 20

CONCLUSION........................................................................................................ 21

i

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004).................................................................................................10, 12

*Aflac, Inc. v. Bloom*,
    948 F. Supp. 2d 1374 (M.D. Ga. 2013) ...............................................................11

*America's Health Ins. Plans v. Hudgens*,
    742 F.3d 1319 (11th Cir. 2014) ...........................................................................18

*Boeing Co. v. Mar.*,
    656 F. Supp. 2d 837 (N.D. Ill. 2009) ....................................................................6

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral
    Associates, P.A.*,
    53 F.3d 172 (7th Cir. 1995) ...........................................................................11, 14

*Connecticut Gen. Life Ins. Co. v. LaPeer Surgery Ctr. LLC*,
    No. 2:13-cv-3726-RGK (JCGx) (slip. op. at 5) (C.D. Cal. Jul 23, 2014)................4

*Cusson v. Liberty Life Assurance Co. of Boston*,
    592 F.3d 215 (1st Cir. 2010) ...............................................................................15

*Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*,
    546 N.E.2d 33 (Ill. App. 1989) ...........................................................................21

*Emerus Hospital Partners, LLC v. Health Care Service Corp.*,
    --- F.Supp.2d ----, 2014 WL 1715516 (N.D. Ill. 2014)........................................18

*Fregeau v. Life Ins. Co. of North America*,
    490 F.Supp.2d 928 (N.D. Ill. 2007) ....................................................................15

*Funk v. CIGNA Grp. Ins.*,
    648 F.3d 182 (3d Cir. 2011)................................................................................14

*Gutta v. Standard Select Trust Ins. Plans*,
    530 F.3d 614 (7th Cir. 2008) ...........................................................12, 14, 15, 16

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000)............................................................................................16

*Hefferman v. Bass*,
    467 F.3d 596 (7th Cir.2006) ...............................................................................19

*Hoese v. Safety Partners, Ltd.*,
    No. 13 C 7615, 2014 WL 1477923 (N.D. Ill. Apr. 15, 2014)................................13

i

*Hyatt Int'l Corp. v. Coco*,
  302 F.3d 707 (7th Cir. 2002) ................................................................8

*Kennedy v. Connecticut General Life Insurance Co.*,
  924 F.2d 698 (7th Cir. 1991) ......................................................5, 8, 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014)................................................................3, 9

*Longaberger Co. v. Kolt*,
  586 F.3d 459 (6th Cir. 2009) ..............................................................15

*Medscript Pharmacy, LLC v. My Script, LLC*,
  No. 14 C 0469, 2015 WL 149062 (N.D. Ill. Jan. 12, 2015) ...............18, 19

*Menard, Inc. v. U.S. Equities Dev., Inc.*,
  No. 01 C 7142, 2002 WL 31050160 (N.D. Ill. Sept. 13, 2002).........................19, 20

*Merrimon v. Unum Life Ins. Co. of Am.*,
  758 F.3d 46 (1st Cir. 2014)................................................................2, 3

*NewPage Wisconsin Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg.,*
  *Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*,
  651 F.3d 775 (7th Cir. 2011) ................................................................3, 5, 6

*Nutrishare, Inc. v. Connecticut Gen. Life Ins. Co.*,
  No. 2:13-cv-02378-JAM-AC, 2014 WL 1028351 (E.D. Cal. Mar. 14, 2014) ...................4, 7

*Olvera v. Blitt & Gaines, P.C.*,
  431 F.3d 285 (7th Cir. 2005) ................................................................14

*OSF Healthcare Sys. v. Banno*,
  No. 08-1096, 2008 WL 5170628 (C.D. Ill. Dec. 10, 2008)..................................19

*OSF Healthcare Sys. v. Banno*,
  No. 08-1096, 2010 WL 431963 (C.D. Ill. Jan. 29, 2010) ...................................19

*Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Solutions LLC*,
  No. 1:13-CV-00133-RLY, 2014 WL 6750042 (S.D. Ind. Dec. 1, 2014) .......................19

*Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
  4 F.Supp.3d 929, 940 (N.D. Ill. 2013) ...................................................5, 11

*Pilkington PLC v. Perelman*,
  72 F.3d 1396 (9th Cir. 1995) ................................................................4

*Pohl v. McCaffrey*,
  No. 04 C 6223, 2006 WL 208710 (N.D. Ill. Jan. 25, 2006) ...................................11

ii

*Scanlan v. Eisenberg*,
    669 F.3d 838 (7th Cir. 2012) ........................................................................3, 9

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
    547 U.S. 356 (2006)......................................................................................14, 15

*Spitz v. Tepfer*,
    171 F.3d 443 (7th Cir. 1999) ............................................................................4

*Stapleton v. Advocate Health Care Network*,
    No. 14 C 01873, 2014 WL 7525481 (N.D. Ill. Dec. 31, 2014) ................................9

*Strategic Lending Solutions LLC v. United Def. Grp. LLP*,
    No. 13-CV-08232, 2014 WL 5461583 (N.D. Ill. Oct. 28, 2014) ...........................18

*Trustmark Life Ins. Co. v. Hibben*,
    08-CV-6960, 2009 WL 1684513 (N.D. Ill. 2009) .............................................5, 6

*Vangsness v. Deutsche Bank Nat. Trust Co.*,
    No. 12 C 50003, 2013 WL 3031017 (N.D. Ill. June 17, 2013) .........................20, 21

*Weitzenkamp v. Unum Life Ins. Co. of Am.*,
    661 F.3d 323 (7th Cir. 2011) ...........................................................................12

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
    536 F.3d 663 (7th Cir. 2008) .........................................................................20, 21

*Winstead v. J.C. Penney Co.*,
    933 F.2d 576 (7th Cir. 1991) ............................................................................4

*Yellow Grp. LLC v. Uber Technologies Inc.*,
    No. 12 C 7967, 2014 WL 3396055 (N.D. Ill. July 10, 2014) ...............................11

**Statutes**

215 ILCS 5/352(a) ........................................................................................17

215 ILCS § 5/4.............................................................................................17

215 ILCS § 5/368d(c) ....................................................................................17

215 ILCS § 5/368d(c)(1)................................................................................17

28 U.S.C. § 1332(a) .......................................................................................12

29 U.S.C. .....................................................................................................9

29 U.S.C. § 1002(21)(A)................................................................................9

131007164v1 0963977

29 U.S.C. § 1104(a)(1)(D) ...........................................................................................3, 6

29 U.S.C. § 1132(a)(3)......................................................................................................9

29 U.S.C. § 1132(a)(3). ERISA .......................................................................................3

29 U.S.C. § 1133 ............................................................................................................16

Declaratory Judgment Act ...........................................................................................2, 5, 9

Declaratory Judgment Act, 28 U.S.C. § 2201.............................................................5, 9

Employee Retirement Income Security Act of 1974 ......................................................1

ERISA .................................................................................................................... *passim*

ERISA § 502(a)(1)(B).......................................................................................................5

ERISA § 502(a)(3) ............................................................................................................3

ERISA § 502(a)(3) ............................................................................................................9

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ....................................................................6

ERISA § 502(a)(3) ..........................................................................................................13

ERISA § 502(a)(3) and a .................................................................................................2

Illinois Consumer Fraud Act............................................................................................2

Article XX of the Insurance Code .................................................................................17

Section 4 of the Insurance Code ....................................................................................17

RICO ...............................................................................................................................19

RICO, 18 U.S.C. § 1962 .................................................................................................19

Texas Prompt Pay Act ....................................................................................................18

**Other Authorities**

29 C.F.R. § 2560.503-1 ...................................................................................................16

Fed.R.Civ.P. 10(c) ..........................................................................................................11

Rule 9(b) .............................................................................................................18, 19, 20

RULE 12(b)(1)...................................................................................................................2

131007164v1 0963977

Rule 12(b)(1) and 12(b)(6)..........................................................................................................2

Rule 12(b)(2)...........................................................................................................................13

RULE 12(b)(6)..........................................................................................................................13

Article III of the U.S. Constitution ...................................................................................2, 4, 5, 9

131007164v1 0963977

## INTRODUCTION

Cigna[1] administers self-funded and insured benefit plans established by employers to provide health benefits coverage to employees and their dependents. (Cplt. ¶15). Under such plans, members may obtain plan benefits for services provided by out-of-network medical providers, but they have incentive to instead choose in-network providers in order to avail themselves of lower coinsurance, deductibles, and copayments ("patient cost shares"). (Cplt. ¶1). Patient cost shares help the sponsors of health plans to control their medical costs since they give patients incentive to select care from in-network providers, who have agreed to accept negotiated rates for treating plan members. Cigna alleges that CMIS is an out-of-network surgery center that has submitted fraudulent and inflated claims for treating Cigna plan members, while waiving all or part of the patients' coinsurance and deductibles; as a result, patients incur lower out-of-pocket costs at CMIS even as CMIS bills Cigna and the plans for amounts exceeding in-network charges.

CMIS treated Cigna plan members and then submitted claims for reimbursement that misrepresented its charges and concealed its cost-share waivers. (Cplt. ¶6). By means of fraudulent claims submitted before August 2012, which are identified in Exhibit 2 to the complaint, CMIS obtained roughly $800,000.00 from Cigna and the plans. (Cplt. ¶37). No payments were actually due because Cigna plans afford coverage only for a percentage of the expenses the member is obligated to pay (Cplt. ¶26, 28, Ex. 1 at 23, 38), and CMIS's cost-share waivers meant that the members were obligated to pay none, or only a fraction, of the charges on its claims. For claims submitted after August 2012, which are listed in Exhibit 3 to the

---

[1] Plaintiffs, Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company, will be referred to as "Cigna." Defendant-counterclaimant, Southwest Surgery Center, LLC, will be referred to as "CMIS" (short for Center for Minimally Invasive Surgery). The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, will be referred to as ERISA.

1

complaint, CMIS has demanded that Cigna reimburse it for purportedly treating the plan members on the listed dates of service. (Cplt. ¶46). CMIS alleges that the billed charges on the post-August 2012 claims exceed $3.5 million. (Counterclaim ¶62, Ex. B).

Cigna's complaint seeks restitution under ERISA § 502(a)(3) of the payments on the pre-August 2012 claims and a declaration under the Declaratory Judgment Act that CMIS has no right to payment on any of its claims. (Cts. I-II). Cigna also pleads intentional and negligent misrepresentation and violations of the Illinois Consumer Fraud Act. Although CMIS denies the Court's jurisdiction, there is an Article III case or controversy because CMIS's practices have caused concrete injury to Cigna and the plans. Cigna is therefore empowered to seek both restitution under ERISA § 502(a)(3) and a declaratory judgment. And even without ERISA jurisdiction, diversity jurisdiction would exist because the parties are diverse and the amount in controversy exceeds $75,000. Last, Cigna's complaint states valid claims for each theory alleged. Therefore, CMIS's combined Rule 12(b)(1) and 12(b)(6) motion to dismiss should be denied

## RESPONSE TO CMIS'S RULE 12(b)(1) ARGUMENTS

### I. Cigna has Article III standing.

This case involves a concrete injury in fact under Article III because CMIS's submission of fraudulent claims for treating plan members induced Cigna and the plans to overpay CMIS by nearly $800,000, and forced Cigna to expend money to investigate and contain the harm caused by the fraudulent scheme. CMIS had no entitlement to the payments because the Cigna plans do not cover services when a medical provider waives patient cost shares. Cigna has a contractual and ERISA-created interest in ensuring that only valid claims are paid under the plans.

Article III of the U.S. Constitution limits the federal courts' judicial power to deciding actual cases and controversies. *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 52 (1st Cir. 2014). A case or controversy requires the plaintiff to "have suffered or be imminently threatened

2

with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). The injury-in-fact requirement may be satisfied solely "by virtue of statutes creating legal rights, the invasion of which creates standing," or the invasion of "legal rights growing out of state law." *Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir. 2012). Standing should not be conflated with the merits; whether "a claim is good differs from the question whether a district court possesses jurisdiction, a matter of adjudicatory competence." *NewPage Wisconsin Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, 651 F.3d 775, 777 (7th Cir. 2011); *Merrimon*, 758 F.3d at 52.

A.      **Cigna has standing to seek relief under ERISA § 502(a)(3).**

This case presents a concrete injury in fact stemming from the fraudulent reimbursement claims submitted by CMIS. Cigna is a claims fiduciary of the plans. (Cplt. ¶¶15-16; Doc. 1-1 at 55). Cigna has a statutory right to seek redress for payments CMIS obtained in violation of the plans' terms. In ERISA Section 502(a)(3), Congress authorized Cigna to bring an action to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." § 502(a)(3), 29 U.S.C. § 1132(a)(3). ERISA mandates that a fiduciary such as Cigna "discharge [its] duties with respect to a plan … in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA. § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). The plans themselves grant Cigna a contractual right to recover overpayments. If Cigna overpays a claim, it "will have the right … to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future

3

claim payment." (Doc. #1-1 at 42).

ERISA recognizes Cigna's interest in ensuring that its plans are administered properly and grants Cigna a right of action to redress violations of the plans. Given Cigna's established rights and obligations regarding proper plan administration, it has Article III standing to seek redress when providers obtain payments in violation of plan terms. *See Connecticut Gen. Life Ins. Co. v. LaPeer Surgery Ctr. LLC*, No. 2:13-cv-3726-RGK (JCGx), slip. op. at 5, (C.D. Cal. Jul 23, 2014) (attached hereto as **Exhibit 1**) (because Cigna had "concrete interest in insuring that only valid claims are paid" under plans, Cigna's suit seeking recovery of overpayments from out-of-network provider met all Article III requirements); *Nutrishare, Inc. v. Connecticut Gen. Life Ins. Co.*, No. 2:13-cv-02378-JAM-AC, 2014 WL 1028351, at *2-*3 (E.D. Cal. Mar. 14, 2014) (given Cigna's fiduciary status, it had "duty to enforce the terms of the ERISA plans and thus standing to bring the federal claims at issue").

The circuit courts have also found that plan fiduciaries have Article III standing to sue under § 502(a)(3). In *Winstead v. J.C. Penney Co.*, 933 F.2d 576, 577-80 (7th Cir. 1991), two health plans covering the same minor disputed which of them was responsible for covering the minor's medical expenses; one of the plans and its trustee filed suit for a declaration that the second plan was primary under the plans' coordination-of-benefits clauses. Referring to the claims by the plan and the trustee, the court held that "we do no semantic violence to section 1132(a)(3) when we interpret it to allow an ERISA plan to bring a declaratory judgment action to determine the extent of its liability." *See also Pilkington PLC v. Perelman*, 72 F.3d 1396, 1400 (9th Cir. 1995) (plan fiduciary had standing to bring action under § 1132(a)(3) for fiduciary breach against predecessor fiduciary); *Spitz v. Tepfer*, 171 F.3d 443, 450 (7th Cir. 1999) (exercising jurisdiction over fiduciary's suit for declaration regarding validity of plan

4

amendments adopted by former fiduciary). Thus, contrary to CMIS's argument, Cigna, as a plan fiduciary, has Article III standing to seek relief under ERISA.

### B.      Cigna has standing to seek relief under the Declaratory Judgment Act.

The case law also establishes that Cigna as a fiduciary has standing to obtain relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. In Count I, Cigna seeks a declaratory judgment that CMIS is not entitled to reimbursement from Cigna or the plans. This count alleges that CMIS waived patients' cost shares, that the plans exclude coverage where cost shares are waived, and therefore that CMIS has no right to payment for the services identified in Exhibits 2 and 3 to the complaint. (Doc. #1-3). A party may bring a declaratory judgment action under 28 U.S.C. § 2201 if there is an actual controversy between the two parties. *NewPage Wisconsin*, 651 F.3d at 776. If declaratory relief is sought to "block an expected suit by the declaratory-relief defendant," the court's jurisdiction depends on whether the court would have jurisdiction over the suit by the declaratory-relief defendant, the natural plaintiff. *Trustmark Life Ins. Co. v. Hibben*, 08-CV-6960, 2009 WL 1684513, at *3 (N.D. Ill. 2009). "If a well-pleaded complaint by the defendant (the 'natural plaintiff') would have arisen under federal law, then the court has jurisdiction when the 'natural' defendant brings a declaratory-judgment suit." *NewPage Wisconsin*, 651 F.3d at 777-78.

Here, a well-pleaded complaint by CMIS would arise under federal law. As a medical provider with assignments of its patients' benefits under ERISA plans, CMIS is an ERISA beneficiary, and it could have brought a claim under ERISA § 502(a)(1)(B) to recover any payment due for its services. *Kennedy v. Connecticut General Life Insurance Co*., 924 F.2d 698, 700 (7th Cir. 1991) (provider with assignment was beneficiary under ERISA and could sue under ERISA § 502(a)(1)(B)); *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 4 F.Supp.3d 929, 940 (N.D. Ill. 2013) (noting that ERISA beneficiaries may sue for relief under §

131007164v1 0963977

502(a), and that *Kennedy* "makes plain that providers [with assignments of plan benefits] have status as beneficiaries"). Because the Court would have jurisdiction of a claim for payment by CMIS, the natural plaintiff, the Court has jurisdiction over Cigna's claim for a declaration that CMIS has no right to payment. *NewPage Wisconsin*, 651 F.3d at 777-78 (where employer amended plan to eliminate subsidy for retirees' health benefits premiums, court had jurisdiction of employer's request for declaratory judgment that amendment complied with ERISA because court also had jurisdiction over action by retirees seeking restoration of subsidy); *Trustmark Life Ins. Co. v. Hibben*, 08-CV-6960, 2009 WL 1684513, at *2 (N.D. Ill. 2009) (claim administrator and insurer of plan benefits had standing to bring declaratory judgment claim regarding right to offset participant's disability benefits against his severance payments); *Boeing Co. v. Mar.*, 656 F. Supp. 2d 837, 845 (N.D. Ill. 2009) (court had jurisdiction where employer amended health benefit plan to terminate lifetime benefits for certain retirees and then sought declaration that amendments complied with ERISA).

### C. CMIS's arguments are flawed.

While CMIS argues that Cigna lacks a concrete injury because many Cigna plans are funded by their sponsors and thus claims are not paid with Cigna's funds (CMIS Mem. at 4), this argument overlooks Cigna's statutory and contractual right to seek redress for claims payments that violate a plan's terms. *See* plan document (Doc. #1-1 at 42 of 68) (Cigna's right to recover overpayments); ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (Cigna's right to seek equitable relief to redress plan violations). CMIS also overlooks Cigna's fiduciary duty to administer plans in accordance with their terms. § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) (fiduciary must "discharge [its] duties … in accordance with the documents and instruments governing the plan"); *see also LaPeer Surgery Ctr.*, slip. op. at 5 (Ex. 1) (noting that plan fiduciary's interest in plan's overpayments is not abstract or hypothetical; rather, it has "concrete interest in insuring

6

that only valid claims are paid;") *Nutrishare, Inc*., 2014 WL 1028351, at *3 (noting fiduciary's "duty to enforce the terms of the ERISA plans"). And CMIS overlooks that Cigna insured the plans covering patient JT for the November 21, 2011 date of service, and patient ES for the January 7, 2011 date of service; Cigna's records indicate it paid CMIS a total of $49,521.51 with its own funds on these claims. (Ex. 2 to Cigna's Complaint, Doc. #1-2 at 1-2). Last, CMIS ignores that Cigna expended money to investigate and contain the harm caused by CMIS's fraudulent billing scheme. (Cplt. ¶¶37-45).

CMIS's argument regarding the plans' maximum reimbursable charge provisions fares no better. (CMIS Mem. at 3-4). CMIS notes that these provisions limit a provider's reimbursement to the lesser of: (a) the provider's "normal charge for a similar service or supply" or (b) the amount in a schedule of charges developed by Cigna. CMIS contends that billed charges in excess of Cigna's schedule would not damage Cigna or the plans because the maximum reimbursable charge term would limit payment to the scheduled amount. This argument has several flaws. First, in its counterclaim, CMIS itself contends that Cigna is liable based on fraud and promissory estoppel to pay the billed charges that Cigna contends are inflated and fraudulent. (Doc. #16 at ¶51). If, as Cigna contends, the charges are inflated, but Cigna is estopped to deny payment, the inflation of the charges does injure Cigna. Second, as CMIS tacitly concedes, inflated charges that are greater than the provider's "normal charge" but less than the amount in Cigna's schedule would result in overpayments that injure Cigna and the plans. For example, assume that CMIS's normal charge for a service is $5, the maximum in Cigna's scheduled is $10, CMIS bills Cigna $7, and the plan affords coverage for 70% of the maximum reimbursable charge. If Cigna pays CMIS based on the billed charge, CMIS obtains $4.90 from the plan (70% of the billed charge), but only $3.50 was due (70% of the normal

7

charge). CMIS thus obtains an overpayment by inflating its charges. Cigna contends that all of CMIS's charges are inflated because CMIS routinely waives patient cost shares, and thus its "normal charge" for any service must be discounted by the percentage for which the patient is responsible. If the patient is responsible for 30% of the allowed charge for an out-of-network service, then CMIS's normal charge for the service would not be the face amount of the billed charge, but 70% of that amount.

Most important, CMIS's argument overlooks that the plans exclude coverage altogether for its claims because it waives patient cost shares, and thus it is not entitled to any payment at all. The Cigna plans, like the plan in *Kennedy*, 924 F.2d at 701-702, cover only a percentage of the charges that the patient is obligated to pay (Cplt. ¶¶26, 28); in *Kennedy* the patient was not responsible for any of the charges because the provider waived the patient's cost share, and therefore the court found no payment was due to the provider. Similarly, here, the patients are not obligated to pay CMIS's charges because CMIS has waived or forgone collection of the patient cost shares; because the patients do not owe its charges, CMIS is not entitled to payment under the plans, yet CMIS obtained nearly $800,000 from the plans. The plans and Cigna accordingly sustained concrete injuries, despite the maximum reimbursement charge terms.[2]

Finally, CMIS's arguments for lack of standing fail to address at all Cigna's right, discussed above, to seek a declaration that nothing is payable to CMIS. CMIS itself has now counterclaimed against Cigna seeking payment on the claims that were denied before and after Cigna flagged CMIS for fee-forgiveness. There is indisputably a live controversy that is within the Court's jurisdiction regarding whether CMIS is entitled to reimbursement for the claims. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (reversing district court's dismissal

---

[2] Cigna also pleads injury in fact because CMIS's cost-share waivers impair Cigna's ability to manage healthcare expenses under employers' plans and its ability to provide in-network providers with the patient volume they get in return for agreeing to negotiated rates. (Cplt. ¶¶1, 9).

of "natural defendant's" declaratory judgment action).

"[H]istory and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *Scanlan*, 669 F.3d at 845-46. If parties have "long been permitted to bring" the type of suit at issue, that is "well nigh conclusive" that Article III standing exists. *Scanlan*, 669 F.3d at 846. The case law has long permitted fiduciaries such as Cigna to bring claims for equitable relief under § 502(a)(3) and claims for declaratory relief under 28 U.S.C. § 2201. "Where an action concerns allegations about a benefit plan's potential liabilities under federal law, '[a] federal district court is the right forum for a dispute about the meaning of ERISA.'" *Stapleton v. Advocate Health Care Network*, No. 14 C 01873, 2014 WL 7525481, at *2 (N.D. Ill. Dec. 31, 2014). It is clear that Cigna has Article III standing to bring its claims, and CMIS's motion should therefore be denied.

## II.     CMIS's "statutory standing" argument is misguided.

CMIS's argument that subject-matter jurisdiction is absent because Cigna lacks "statutory standing" betrays a misunderstanding of the law. (CMIS Mem. at 5). Whether a defendant may sue under a statute (or, in CMIS's parlance, has "statutory standing") implicates the merits, not subject-matter jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1394 n. 4 (2014); *Stapleton*, 2014 WL 7525481, at *2. On this basis alone, CMIS's argument fails. But CMIS's argument also fails on its own terms because Cigna is a fiduciary and therefore authorized to sue for relief under ERISA and the Declaratory Judgment Act.

As stated, ERISA § 502(a)(3) authorizes a fiduciary to redress violations of the terms of a plan or the statute. 29 U.S.C. § 1132(a)(3). An entity is a fiduciary if it is named in the plan as a fiduciary, 29 U.S.C. § 1102(a), of it "exercises discretionary control or authority over the plan's management, administration, or assets." 29 U.S.C. § 1002(21)(A). The "ultimate decisionmaker in a plan regarding an award of benefits" is a fiduciary and acts as one "when determining a

9

participant's or beneficiary's claim." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 219 (2004).

Cigna's complaint readily establishes that it is a plan fiduciary for purposes of deciding claims for benefits, calculating covered expenses, and collecting overpayments. Cigna alleges it "is granted discretionary authority over the payment of benefits under employer-sponsored health benefit plans." (Cplt. ¶16). The plan document attached to the complaint grants Cigna extensive discretionary authority, providing:

> The Plan Administrator [defined as the employer-sponsor] delegates to Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include … the determination of eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to Cigna the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative. (Doc. #1-1 at 55 of 68).

The plan document provides that Cigna will decide both levels of appeal offered to claimants (Doc. #1-1 at 50) and that Cigna "in its discretion, will calculate Covered Expenses following evaluation and validation of all provider billings." (Doc. #1-1 at 42). The Payment of Benefits clause provides that a member's "Benefits are assignable to a provider" and that when an overpayment occurs, "Cigna will have the right to at any time to: recover that overpayment from the person to whom or on whose behalf it was made." (Doc. #1-1 at 42).

CMIS's argument that Cigna is not a fiduciary is contradicted by *Aetna Health*'s holding that "the ultimate decisionmaker in a plan" is a fiduciary and acts as a fiduciary when exercising that decision-making power. *Aetna Health*, 542 U.S. at 220. The plan document attached to the complaint, which is representative of the other plans Cigna administers (Cplt. ¶17), shows that Cigna has discretion and authority over the payment of claims, the calculation of benefits, and the collection of overpayments. (Doc. #1-1 at 42). CMIS's assertion that "Cigna does not

10

describe the duties or tasks it performs" is flatly contrary to the plan document, which is "a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Although CMIS denies that Cigna has the discretion and authority accorded it in the plan document, this denial goes nowhere because the complaint's well-pleaded factual allegations must be taken as true and all reasonable inferences drawn in Cigna's favor. *Yellow Grp. LLC v. Uber Technologies Inc.*, No. 12 C 7967, 2014 WL 3396055, at *2 (N.D. Ill. July 10, 2014).

CMIS's contention that Cigna is not acting as a fiduciary when seeking to recoup overpayments fares no better. The exemplary plan gives Cigna discretion and authority over calculating covered expenses and collecting overpayments. (Doc. #1-1 at 42). Cigna acts as a fiduciary when it determines how much a provider has been overpaid and seeks recoupment of the overpayment. *Pennsylvania Chiropractic Ass'n*, 4 F.Supp.3d 929, 946 (N.D. Ill. 2013) (defendant acted as fiduciary if it exerted discretionary control over affiliated companies' recoupment of overpayments from chiropractors under health plans); *Aflac, Inc. v. Bloom*, 948 F. Supp. 2d 1374, 1378 (M.D. Ga. 2013) (plan sponsor was "acting in a fiduciary capacity as the sponsor and manager of" plan when it sought "to recover benefits paid" erroneously to physician who submitted false claim for treating plan member). The notion that a fiduciary is not acting in that capacity when it seeks recovery of overpaid funds has no support in the case law, which consistently allows fiduciaries to bring overpayment claims. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral Associates, P.A.*, 53 F.3d 172, 174-175 (7th Cir. 1995) (where plan made mistaken payment to medical provider for treating member, provider was a beneficiary under ERISA and plan trustee's "equitable action to recover benefits erroneously paid ... falls within the clear grant of jurisdiction contained in" § 502(a)(3)); *Pohl v. McCaffrey*, No. 04 C 6223, 2006 WL 208710, at *4 (N.D. Ill. Jan. 25, 2006) (trustee of

retirement plan could bring action under § 502(a)(3) to obtain restitution of shares of stock erroneously transferred to former plan participant).

Although CMIS argues that Cigna lacks "statutory standing" because it seeks recovery for its own account, Cigna will credit all amounts recouped to the plans that paid them. Further, CMIS's assertion on this point is contrary to Seventh Circuit law, which permits plan insurers to seek reimbursement in their own right of overpayments. *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 616, 621 (7th Cir. 2008) (disability insurer allowed to assert equitable lien by agreement under § 502(a)(3) against participant whose benefits should have been offset against benefits received under other group insurance); *see also Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 332 (7th Cir. 2011) (same).

In the end, CMIS's argument fails because a benefit decision "is part and parcel of the ordinary fiduciary responsibilities connected to" a plan, and a decisionmaker acts as a fiduciary "when determining a participant's or beneficiary's claim." *Aetna Health*, 542 U.S. at 219. Cigna acts as a fiduciary when it determines that CMIS has been overpaid and seeks to recover the overpayment.[3] Cigna therefore has a cognizable claim under § 502(a)(3).

## III.    The Court has diversity jurisdiction.

A court has diversity jurisdiction if the plaintiff and defendant are citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). This Court would have diversity jurisdiction even if none of the plans was governed by ERISA because the parties are admittedly citizens of different states and CMIS's own counterclaim reveals that the matter in controversy exceeds $75,000.

---

[3] CMIS's last statutory standing argument is that CMIS has no obligation to collect cost shares (CMIS Mem. at 7). But the basis of Cigna's claims is that CMIS got money from the plans it was not entitled to because of exclusions for expenses that a plan member is not obligated to pay. Because CMIS waived patient cost shares, patients were not obligated to pay its charges; therefore the payments it received violated the terms of the plans.

131007164v1 0963977

If a suit seeks "the equitable remedies of an injunction or a declaratory judgment, the amount in controversy is determined by the value to the plaintiff (or petitioner) of the object of the litigation," which is defined as the "pecuniary result that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment." *Hoese v. Safety Partners, Ltd.*, No. 13 C 7615, 2014 WL 1477923, at *3 (N.D. Ill. Apr. 15, 2014). The amount in controversy is satisfied because Cigna seeks a declaration that no payments are due to CMIS for its treatment of Cigna plan members, and if successful that declaration will protect Cigna and the plans from hundreds of thousands of dollars in liability that CMIS seeks to establish.

In Count I of the counterclaim, CMIS contends it is entitled to recover more than $75,000 for treatments it furnished before August 2012 (when Cigna flagged CMIS for fee forgiveness and refusal to produce documents); CMIS contends promissory estoppel bars Cigna from denying payment on those claims. (CMIS Counterclaim ¶43-44). In Count II, CMIS contends it is entitled to recover more than $75,000 for treatments provided after August 2012 because Cigna fraudulently misrepresented it would pay the claims. (CMIS Counterclaim ¶59, 62). CMIS contends the billed charges on the pre-August 2012 claims, which are summarized in Exhibit A to the counterclaim, exceed $4,000,000, and the billed charges on the post-August 2012 claims, which are summarized in CMIS's Exhibit B, exceed $3,500,000. The declaratory relief sought by Cigna would protect Cigna and the plans from liability that CMIS alleges exceeds the jurisdictional minimum and may exceed several million dollars. Consequently, the Court would have diversity jurisdiction even if it lacked ERISA jurisdiction. None of CMIS's Rule 12(b)(2) arguments are well-founded.

## RESPONSE TO CMIS'S RULE 12(b)(6) ARGUMENTS

**I.      Cigna has stated a claim to recoup the overpayments under ERISA § 502(a)(3).**

A claim fiduciary may bring a § 502(a)(3) claim against a plan participant or beneficiary

to obtain equitable relief to enforce the terms of a plan. *Gutta*, 530 F.3d at 621. To invoke §

502(a)(3)(B), the fiduciary must seek a category of relief typically available in equity, such as

the "imposition of a constructive trust or equitable lien" on the assets of the beneficiary. *Sereboff*

*v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006). Under *Sereboff*, if a plan term requires a

beneficiary to reimburse the plan or a fiduciary for overpaid benefits, it qualifies as "a contract to

convey a specific object even before it is acquired;" such a term makes the beneficiary "a trustee

as soon as he gets a title to the thing [the overpayment]" and forms the basis for an equitable

claim under § 502(a)(3). *Sereboff*, 547 U.S. at 363-64; *Gutta*, 530 F.3d at 621; *Funk v. CIGNA*

*Grp. Ins.*, 648 F.3d 182, 194 (3d Cir. 2011). What is required is that the plan specifically

identify: (1) a particular fund, distinct from the defendant's general assets; and (2) the share of

that fund to which the fiduciary or plan is entitled. *Sereboff*, 547 U.S. at 364. When a fiduciary

asserts an equitable lien by agreement, "strict tracing of the funds to be recovered [is] not

required," and "the fund over which [the lien] is asserted need not be in existence when the

contract containing the lien provision is executed." *Gutta*, 530 F.3d at 620.

Cigna's complaint alleges that before CMIS treated each patient, "CMIS took an

assignment of the patient's benefits under his or her plan." (Cplt. ¶62). A medical provider who

is assigned a patient's ERISA benefits is a plan beneficiary. *Kennedy*, 924 F.2d at 700; *Cent.*

*States*, 53 F.3d at 174. As the plan member's assignee, CMIS stepped into the shoes of each

member, assuming the member's rights and duties under the plan. *Olvera v. Blitt & Gaines, P.C.*,

431 F.3d 285, 288 (7th Cir. 2005) ("assignee steps into the shoes of the assignor, assuming his

rights as well as his duties"). Thus, as a beneficiary under the plans and assignee of the patients'

claims, CMIS is subject to the Payment of Benefits clause, which gives Cigna the right, in the

event of an overpayment, to "recover that overpayment from the person to whom or on whose

14

behalf it was made." (Cplt. ¶64; Doc. #1-1 at 42). The plans' overpayment provisions meet both requirements in *Sereboff* because they identify: (1) a particular fund, distinct from CMIS's general assets — the payments it received under the plans; and (2) the share of that fund to which Cigna and the plans are entitled — the amount by which the benefits received exceeded the benefits due. The plans under which CMIS received an assignment of benefits therefore create an equitable lien by agreement that Cigna can assert under § 502(a)(3) to recover the overpayments. *Sereboff*, 547 U.S. at 363-64 (provision requiring members to reimburse health plan for medical expenses it paid if they later recovered money from third party for same injury created equitable lien that could be asserted under § 502(a)(3)); *Gutta*, 530 F.3d at 620 (plan term requiring participant to reimburse insurer if it overpaid disability benefits due to participant's receipt of sums under other group disability coverage created equitable lien by agreement); *Fregeau v. Life Ins. Co. of North America,* 490 F.Supp.2d 928, 932 (N.D. Ill. 2007); *see also Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d 215, 231 (1st Cir. 2010) (insurer's claim was equitable because "contract between [participant] and [insurer] put [participant] on notice that she would be required to reimburse [insurer] for" overpayment of benefits).

Although CMIS asserts that Cigna's recoupment claim fails because CMIS did not segregate the benefit payments and they are not "particularized or identifiable" (CMIS Mem. at 9), the Seventh Circuit squarely rejected this argument in *Gutta*, holding that a plan's insurer may assert an equitable lien by agreement under § 502(a)(3) "even if the benefits it paid [the plan member] are not specifically traceable to Gutta's current assets because of commingling or dissipation." 530 F.3d at 621. *See also Longaberger Co. v. Kolt*, 586 F.3d 459, 466 (6th Cir. 2009) (allowing plan fiduciary to impose equitable lien on attorney who received distribution of funds giving rise to overpayment and then commingled funds with other assets because

15

"equitable lien by agreement does not require tracing or maintenance of a fund").

Last, even if CMIS were not an ERISA beneficiary, Cigna would still have a § 502(a)(3) claim because "§ 502(a)(3) admits of no limit … on the universe of possible defendants."[4] *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000). For all these reasons, Cigna has stated a valid claim for recoupment.

### A. The exhaustion doctrine and Illinois law do not bar Cigna's ERISA claim.

While CMIS argues that Cigna's claim fails because its determination that CMIS was overpaid is an adverse benefit determination that triggers the internal review requirements under 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1, the weight of the case law holds that a fiduciary's claim for reimbursement is not an adverse benefit determination. ERISA provides review procedures for beneficiaries seeking benefits, not fiduciaries seeking overpayments. *Conn. Gen. Life Ins. Co. v. Hous. Scheduling Servs., Inc.*, No. 3:12-cv-01456 (MPS) rul. transcript at 47-48 (D. Conn. Sept. 30, 2013) (attached hereto as **Exhibit 2**) ("demand for reimbursement is not an adverse benefit determination ... Nothing in the statute suggests that a health plan's demand for reimbursement constitutes a denial of benefits"); *Aetna Life Ins. Co. v. Cleveland Imaging and Surgical Hospital, LLC*, No. 4:12-cv-02451, slip op. at 5 (S.D. Tex. Aug. 20, 2014) (attached as **Exhibit 3**) (ERISA is "about beneficiaries recovering from plans – not the other way around").

Further, whether to require internal review "is left to the discretion of the district court." *Gutta*, 530 F.3d 614. While a plaintiff claiming a denial of benefits must exhaust administrative remedies under a plan, "it does not follow that a fiduciary must do so before bringing suit for restitution" of overpayments under § 502(a)(3). *La Peer Surgery Center* (Ex. 1) slip op. at 8 of

---

[4] In addition to its equitable lien theory, Cigna can obtain restitution of the overpayments by showing that CMIS knew that it was being paid more than it was due as a result of its cost-share waivers. "The transferee of ill-gotten trust assets may be held liable" if he knew or should have known of the "existence of the trust and the circumstances" rendering the transfer in breach of trust. *La Peer Surgery*, (Ex. 1) slip op. at 9-10.

12. Indeed, in *Gutta*, the court affirmed the insurer's recovery of an overpayment without requiring exhaustion of internal review. ERISA simply does not afford procedures or administrative remedies for a fiduciary in Cigna's position to exhaust. Nor does CMIS allege that it has established internal mechanisms whereby Cigna could apply to CMIS for a refund of the overpayments and then request review of any refusal by CMIS to refund the overpayments. Because ERISA and CMIS do not provide review procedures that apply to Cigna's reimbursement claim, the exhaustion doctrine does not apply. *La Peer Surgery Center* (Ex. 1) slip op. at 8 of 12; *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, No. 2:13-cv-02378-JAM-AC, 2014 WL 1028351, at *3-*4 (E.D. Cal. Mar. 13, 2014) (declining to require exhaustion of claims administrator's ERISA claim against provider because "[n]either the relevant ERISA provisions nor rulings from other federal courts indicate any such exhaustion requirement"); *Conn. Gen. Life Ins. Co. v. Roseland Ambulatory Ctr., LLC*, No. 2:12–cv–05941 (DMC)(JBC), 2013 WL 5354216, at *3 (D. N.J. Sept. 24, 2013) (rejecting provider's argument that administrator's ERISA claim should be dismissed for failure to exhaust).

Although CMIS also contends that Cigna's recoupment claim is barred because 215 ILCS § 5/368d(c) requires a request for recoupment to be made within 18 months of payment, § 5/368d(c) does not apply when the insurer obtains a court determination that the payment was obtained through "fraud or material misrepresentation." 215 ILCS § 5/368d(c)(1). Cigna seeks such a determination. Further, Article XX of the Insurance Code, which contains § 5/368d, applies only to accident and health insurance policies. 215 ILCS 5/352(a) (stating article applies to companies transacting business specified in clause (b) of Class 1 and clause (a) of Class 2 in Section 4 of the Insurance Code, 215 ILCS § 5/4). The vast majority of the plans here are self-funded by their employer-sponsors, not insured by Cigna; consequently, § 5/368d is, by its own

17

terms, inapplicable. Last, § 5/368d is preempted by ERISA insofar as it applies to ERISA plans. *Emerus Hospital Partners, LLC v. Health Care Service Corp.*, --- F.Supp.2d ----, 2014 WL 1715516 (N.D. Ill. 2014) (ERISA completely preempted providers' claims alleging that Blue Cross entities violated the Texas Prompt Pay Act by failing to timely pay claims for treating members of health benefit plans); *see also America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1331-32 (11th Cir. 2014) (Georgia act requiring ERISA plans and their third-party administrators to promptly pay clean claims was preempted by ERISA).

For all these reasons, Cigna has stated a valid claim for recoupment.

## II.    Cigna has stated a claim for fraud.

The elements of fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Strategic Lending Solutions LLC v. United Def. Grp. LLP*, No. 13-CV-08232, 2014 WL 5461583, at *4 (N.D. Ill. Oct. 28, 2014). Under Rule 9(b), a fraud complaint must allege "the who, what, when, where, and how" of the fraud, but this heightened standard "does not require extreme specificity." *Medscript Pharmacy, LLC v. My Script, LLC*, No. 14 C 0469, 2015 WL 149062, at *3 (N.D. Ill. Jan. 12, 2015).

Cigna's complaint pleads each element of fraud: It recites that shortly after the date of service for each patient listed on Exhibit 2, CMIS sent Cigna a reimbursement claim for that patient; that each such claim fraudulently overstated CMIS's charges; that CMIS knew the charges were overstated because it knew would waive, discount, or fail to collect the patient cost share; that CMIS intended for Cigna to rely on the claims by paying them; and that Cigna detrimentally relied on the claims by paying CMIS roughly $800,000. (Cplt. ¶¶72-78). These allegations sufficiently make out the who (CMIS), what (overstated charges), when (dates of

18

service on Exhibit 2), where (CMIS's office), and how (reimbursement claims), of the fraud. *Medscript Pharmacy*, 2015 WL 149062, at *3 (allegation that defendant pharmacy's employees falsely told multiple prescribers that plaintiff compounding pharmacy had been closed and its business taken over by defendant pharmacy stated claim for statutory fraud torts); *see also Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir.2006) (investor in car wash business stated fraud claim against his partner's attorney by alleging approximate time of partner's misrepresentation and generally that alleging attorney assisted partner in fraud). And Cigna need only allege that CMIS submitted the fraudulent claims; "institutional identifications meet the Rule 9(b) standard." *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Solutions LLC*, No. 1:13-CV-00133-RLY, 2014 WL 6750042, at *4 (S.D. Ind. Dec. 1, 2014) (citing *Blaz v. Michael Reese Hosp. Found.*, 191 F.R.D. 570, 574 (N.D. Ill. 1999)). Hence, Cigna has stated a claim for fraud.[5]

## III. Cigna has stated a claim for negligent misrepresentation.

CMIS challenges only whether the complaint pleads that CMIS is in the business of supplying information for the guidance of others in their business transactions, such that CMIS can be held liable for negligent misrepresentations despite the economic loss doctrine. Whether a defendant is in the business of supplying such information involves a "precise, case-specific inquiry." *Menard, Inc. v. U.S. Equities Dev., Inc.*, No. 01 C 7142, 2002 WL 31050160, at *8 (N.D. Ill. Sept. 13, 2002). The defendant is not in the "business of supplying information" if the "intended end result" of the parties' relationship is the creation of "a product, a tangible thing," or if the information supplied "is merely ancillary to the sale of a product or service or in

---

[5] CMIS's citation to *OSF Healthcare Sys. v. Banno*, No. 08-1096, 2008 WL 5170628 (C.D. Ill. Dec. 10, 2008), undermines its argument. (CMIS Mem. at 12). A provider (OSF) that was in-network for Caterpillar's health plan sued an out-of-network surgery center, alleging that the center violated RICO, 18 U.S.C. § 1962, by waiving cost shares of Caterpillar plan members and submitting inflated claims to Caterpillar. The court dismissed the RICO count without prejudice and directed OSF to clarify several issues, including whether the fraudulent billing related to professional fees as well as facility fees, and how Caterpillar relied on the misleading claims. The court ultimately upheld the RICO claim. *OSF Healthcare Sys. v. Banno*, No. 08-1096, 2010 WL 431963, (C.D. Ill. Jan. 29, 2010).

19

connection with the sale." *Id.*

Here, Cigna's complaint adequately pleads that CMIS is in the business of supplying information for the guidance of others in their business dealings. Cigna alleges that CMIS supplied information contained in the reimbursement claims, and it did so to guide Cigna and the plans in the transactions in which they determined how much to reimburse CMIS. (Cplt. ¶83). CMIS did not provide Cigna with a product or service; CMIS sought only to obtain reimbursement from Cigna and the plans for treating the plan members. Consequently, CMIS's relationship to Cigna and the plans was limited to the provision of information to guide them in determining how much to pay CMIS. The exception therefore applies, and Cigna has stated a claim for negligent misrepresentation.

## IV. Cigna has stated a claim under the Illinois Consumer Fraud Act ("ICFA").

The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; and (4) the defendant's conduct is the proximate cause of plaintiff's injury. *Vangsness v. Deutsche Bank Nat. Trust Co.*, No. 12 C 50003, 2013 WL 3031017, at *5 (N.D. Ill. June 17, 2013). ICFA claims based on unfair practices are not subject to the heightened pleading standard of Rule 9(b); ICFA claims based on deceptive practices are. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008)

Here, the complaint pleads deceptive practices with the particularity required under Rule 9(b) for the reasons stated in Section III above. The who, what, when, and how CMIS's conduct are pleaded. (Cplt. ¶¶92-98). Cigna's complaint also pleads that CMIS's cost-share waivers are an unfair practice; Cigna alleges that cost-share waiver gives CMIS an unfair advantage over providers who do not waive cost shares and drive up healthcare costs for employers and

20

consumers. (Cplt. ¶93). Cigna alleges that this unfair practice caused it injury by causing it to pay claims and by driving up costs to the plans. The complaint therefore states an ICFA claim based on CMIS's unfair practices. *Windy City*, 536 F.3d at 672 (businesses stated ICFA claim based on unfair practices by alleging that finance company disseminated false advertisements to induce them to enter into unconscionable equipment rentals); *Vangsness*, 2013 WL 3031017, at *5 (plaintiffs stated claims for unfair and deceptive practices by alleging that bank misrepresented status of request for mortgage modification and of foreclosure action).

CMIS argues that Cigna's ICFA claim fails because Cigna purportedly does not plead "any effect on consumers." (CMIS Mem. at 14). But the complaint alleges that "CMIS induces members of Cigna health plans to have surgeries performed at CMIS's surgical center either by misrepresenting that the patient will not be liable for any cost shares under his or her plan or by promising to bill the patient as if CMIS were within Cigna's network." (Cplt. ¶6). The premise of CMIS's argument is simply untrue. And the seminal case, *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill. App. 1989), holds that the consumer nexus is met "where plaintiff has alleged defendant published false information about [plaintiff's] prices for services," which is exactly what is alleged in ¶6. Thus, Cigna has stated an ICFA claim.

## CONCLUSION

For all the foregoing reasons, Cigna respectfully submits that the Court should deny CMIS's motion to dismiss as to all counts of Cigna's complaint.

Respectfully submitted:

Connecticut General Life Insurance Company
and Cigna Health and Life Insurance Company

By:    s/Peter E. Pederson
        One of its attorneys

Daniel K. Ryan
Peter E. Pederson
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704-3000 Phone
(312) 704-3001 Fax
dryan@hinshawlaw.com
ppederson@hinshawlaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on February 27, 2015, he e-filed this document through the Court's CM/ECF system, which will cause a copy of the document to be served on counsel of record identified below.

s/ Peter E. Pederson

Douglas L. Prochnow, Esq.
John A. Roberts, Esq.
William R. Andrichik, Esq.
LOCKE LORD LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-1229
(312) 201-2000 (phone)
(312) 201-2555 (facsimile)
douglas.prochnow@lockelord.com
john.roberts@lockelord.com
william.andrichik@lockelord.com

22