# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company, <br><br> Plaintiff, <br><br> v. <br><br> Southwest Surgery Center, LLC, d/b/a Center for Minimally Invasive Surgery, <br><br> Defendant. | Case No. 14 CV 08777 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company ("Cigna"), a managed care company responsible for administering health and welfare benefit plans, brings this action against Southwest Surgery Center, LLC ("CMIS"), an out-of-network health care provider. Cigna seeks a declaratory judgment that CMIS has engaged in fee-forgiving practices that have eliminated Cigna's obligation to pay or otherwise reimburse CMIS for services provided. Additionally, Cigna asserts claims of recoupment of overpayments received by CMIS; fraudulent misrepresentation; negligent misrepresentation; and violation of the Illinois Consumer Fraud and Deceptive Practices Act. CMIS moved to dismiss the complaint under both Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6) [13]. For the reasons explained below, that motion is granted in part and denied in part.

I.   Background

Plaintiff Cigna administers health care benefit plans that employers sponsor to provide health care coverage to employees and their dependents. Complaint ¶ 15. As part of the administration of these plans, Cigna provides coverage for both "in-network" and "out-of-network" health care providers. *Id.* at ¶ 18. Plan members are incentivized to receive services from in-network providers "because they pay lower coinsurance, deductibles, and copayments" for those services. *Id.* at ¶ 4. Members may opt to receive treatment from out-of-network providers, but those providers typically charge higher amounts for treating patients. *Id.* at ¶ 21. Additionally, Cigna plans "typically provide that members must pay higher deductibles and coinsurance when they select out-of-network care instead of in-network care." *Id.* at ¶ 22.

Some out-of-network providers engage in fee-forgiving schemes, however, where the providers do not bill patients for deductibles and coinsurance under plan terms. *Id.* at ¶ 24. This practice "lowers out-of-pocket expenses for plan members, but frustrates the plan sponsors' efforts to control healthcare costs by eliminating plan members' incentive to use in-network services." *Id.* Cigna's plans discourage fee-forgiving practices by: (1) excluding payment for charges that plan members are not obligated to pay, (2) limiting benefits for covered services to "Maximum Reimbursable Charge[s]," and (3) affording coverage only for "Covered Expenses." *Id.* at ¶¶ 25-28.

Here, Cigna claims CMIS engaged in the type of fee-forgiving that the plans are crafted to avoid. *Id.* at ¶¶ 29-36. Cigna states that between "at least 2009 and the present, CMIS promoted itself to Cigna plan members by representing that they [would] be billed as if CMIS [were] an in-network provider, or by representing that it [would] accept reimbursement under the plan as full payment, sparing [the patients] of the need to pay their out-of-network cost shares." *Id.* at ¶ 29. CMIS would then submit "false and misleading" claims, containing "grossly inflated charges for its surgical services." *Id.* Cigna relied on these claims and paid CMIS based on these allegedly inflated charges. *Id.* Cigna claims that it has overpaid CMIS roughly $800,000 in reliance on these misrepresentations. *Id.* at ¶ 37.

In 2012, Cigna initiated an investigation into CMIS's billing practices in an attempt to determine whether CMIS was billing plan members for their portion of the services rendered. *Id.* at ¶ 38. Cigna notified CMIS of the audit and informed CMIS of the cost-share provisions of Cigna's health benefit plans. *Id.* at ¶ 43. As a result of CMIS' refusal to produce its collection legers or billing policies, Cigna flagged CMIS' account, which caused Cigna's claim system to deny "certain claims…submitted after August 2012." *Id.* at ¶¶ 45-46.

Based on these allegations, Cigna brought suit seeking a declaratory judgment relating to the claims Cigna has already paid and those Cigna has denied following the audit. *Id.* at ¶¶ 49-59. Cigna also seeks recovery of the alleged overpayments under the Employee Retirement Income Security Act (ERISA) and common law theories of unjust enrichment and restitution. *Id.* at ¶¶ 60-70. Finally,

Cigna seeks recovery under state law claims of fraud, negligent misrepresentation, and the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). *Id.* at ¶¶ 71-99.

In response, CMIS seeks to have the complaint dismissed for lack of standing under Rule 12(b)(1) and for failure to meet the proper pleading requirements of Rule 12(b)(6).

II. <u>Legal Standard</u>

Under both Rule 12(b)(1) and Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts and draw all reasonable inferences in its favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Dev't Corp.*, 182 F. 3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915.

For a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014). If the jurisdictional facts are challenged, the plaintiff must support those facts by competent proof. *Selcke v. New England Ins. Co.*, 2 F.3d 790, 792 (7th Cir. 1993). The standard for a Rule 12(b)(1) motion differs from that under Rule 12(b)(6) only in that the Court "may properly look beyond the jurisdictional allegations of the [claim] and view whatever evidence has been submitted on the issue to determine whether in fact subject matter

jurisdiction exists." *Apex Digitial, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

To survive a motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A well-pleaded complaint may proceed even if it appears that "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2009). Tersely put, supplying "details is not the function of a complaint." *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 920 (7th Cir. 2002). Rule 12(b)(6) does, however, limit this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

III. <u>Analysis</u>

    A. <u>Cigna's Standing to Bring Its Claims</u>

CMIS asserts two different theories to support its assertion that Cigna lacks standing to bring the claims alleged. First, CMIS argues that Cigna lacks Article III standing because Cigna failed to assert that it had been damaged by CMIS' alleged conduct. Second, CMIS argues that Cigna lacks statutory standing under ERISA, as it is not acting as an ERISA fiduciary.

1. <u>Cigna's Standing Under Article III</u>

CMIS first argues that Cigna lacks Article III standing because Cigna has not alleged that it has personally been harmed by CMIS' actions. CMIS claims that Cigna's maximum reimbursement cap prevented Cigna from any harm that may have been caused by alleged inflated charges. Further, CMIS argues, Cigna was not actually responsible for paying the billed amounts, as Cigna was only the plan administrator. To the extent any harm was suffered, it was suffered by the plans themselves, and not Cigna.

Standing is "'an essential and unchanging part of the case-or-controversy requirement of Article III' of the Constitution." *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "The burden to establish standing is on the party invoking federal jurisdiction" and the party must show "(i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Scanlan v. Eisenberg*, 669 F.3d 838, 841-42 (7th Cir. 2012). The plaintiff must establish that it has "sustained or is immediately in danger of sustaining some direct injury" to meet the injury-in-fact requirement. *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489

(7th Cir. 2004) (quoting *Tobin for Governor v. Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001)). Speculative harm is insufficient. *Id.*

Here, Cigna alleges that CMIS' billing practices caused Cigna to suffer an actual financial injury, resulting in nearly $800,000 of overpayments and additional expenditures to investigate CMIS' billing practices. When ruling on a motion to dismiss for lack of standing, the well-pleaded allegations of the complaint must be accepted as true. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). Here, Cigna alleges that CMIS was not entitled under the terms of the plan to any compensation for services since it waived patients' co-pay requirements. Similarly, in *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 701 (7th Cir. 1991), the plaintiff waived any patient obligation to pay, intending to collect the entirety of the payment from the appellee. In *Kennedy*, the Court determined that under the plan terms, an agreement relieving the patient from any obligation to pay also relieved the insurer of its payment obligations. *Id.* Here, the same type of payment scheme is at issue. Cigna has alleged that it reimbursed CMIS nearly $800,000 for procedures, which, under the plan terms, it did not have an obligation to pay since CMIS waived patient payment obligations. Further, Cigna alleges that it has also devoted time and resources to an investigation of CMIS' billing procedures. In short, Cigna has alleged that it has sustained a direct injury, and thus has met the requirements for Article III standing.

## 2. Cigna's Standing Under ERISA § 502(a)(3)

CMIS next argues that the Cigna also lacks statutory standing under ERISA. CMIS claims that Cigna lacks statutory standing because it is not acting as a fiduciary under ERISA and has not alleged plan terms imposing duties on CMIS. Cigna responds that, as plan administrator, it is a fiduciary under ERISA and as such, it has both statutory and contractual rights to seek recovery.

ERISA § 502(a)(3) allows a fiduciary to bring an action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). Under ERISA, a person is a "fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting the management of such plan or exercises any authority or control respecting the management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); *see also Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). ERISA's understanding of a fiduciary is functional, rather than formal, where the relevant inquiry is into "control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508, U.S. 248, 262 (1993). Any "entity with discretionary authority over benefits determinations" is classified as a plan fiduciary under ERISA's

8

statutory and regulatory scheme. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004).

Here, the complaint alleges that Cigna is given discretionary authority over the payment of benefits under employer-sponsored benefit plans. Because an ERISA fiduciary is a person who exercises *any* discretionary authority over the management of a plan, these allegations are sufficient to demonstrate that Cigna is a fiduciary. Therefore, Cigna has demonstrated that it has statutory standing.

As Cigna has standing under both Article III and ERISA, Cigna has properly established that this Court has subject matter jurisdiction over the complaint.

B. The Sufficiency of Cigna's Complaint

CMIS also contends that Cigna's complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Addressing each of Cigna's arguments in turn, CMIS argues that: (1) recoupment is barred by both ERISA § 502(a)(3) and Illinois state law and amounts to an adverse benefit determination; (2) Cigna failed to plead fraud with sufficient particularity; (3) negligent misrepresentation is barred by the *Moorman* Doctrine; and (4) Cigna lacks standing under the Illinois Consumer Fraud and Deceptive Business Practice Act.

1. Recopument

Cigna asserts that by performing medical services and submitting claims, CMIS took an assignment of the patient's plan benefits, which subjected CMIS to the plan terms. One of these terms provides that Cigna may recover overpayments

9

made to medical providers "at any time." Over the course of several years, Cigna claims that it made overpayments of nearly $800,000 in reliance on the claims CMIS submitted. Acting as a plan fiduciary, Cigna seeks to recover these overpayments. CMIS argues that Cigna may only seek injunctive or equitable relief under ERISA § 502(a)(3) and that Cigna's recoupment claim is legal in nature. CMIS contends that Cigna could only seek recoupment if either CMIS was a party to a plan authorizing recoupment or the funds sought could be traced to a clearly identifiable account, separate from CMIS's general assets. Cigna responds that the plan terms make CMIS a party to the plan, as CMIS was an assignee of each patient's plan benefits. Further, Cigna contends that the plan terms do identify a particular fund, distinct from CMIS's general assets, from which they seek recoupment.

ERISA § 502(a)(3) allows a fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). "Congress did *not* intend to authorize other remedies," including legal relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-210 (2002).

Equitable restitution generally seeks "to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'" *Sereboff v. Mid. Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006) (quoting *Knudson*, 534 U.S. at 213). Additionally, "the action generally must seek not to impose

personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 215 (2002).

In *Sereboff*, the plaintiffs were injured in an automobile accident, and the defendant insurance company paid their medical expenses. *Sereboff*, 547 U.S. at 360. The plaintiffs then received a settlement from several third parties related to the accident. *Id.* The insurance company, invoking a plan provision related to recovery from third parties, sought recovery of the medical expenses paid. *Id.* The Court determined that the plan terms created an equitable lien by agreement, so an "inability to satisfy the 'strict tracing rules' for 'equitable restitution' is of no consequence." *Id.* at 365; *see also Gutta v. Std. Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008) (holding that the defendant could seek recovery under plan terms "even if the benefits it paid [the plaintiff] are not specifically traceable to [the plaintiff's] current assets because of commingling or dissipation"). Similarly, here, Cigna has asserted in the complaint that CMIS acted as an assignee of the patients' benefits and was thus subject to all plan obligations. The plans at issue here, like the plans in *Sereboff*, contain recovery provisions that grant Cigna the right to recover overpayments. As alleged, this plan provision created an "equitable lien by agreement," and thus, Cigna does not have to satisfy the strict tracing requirement to seek recovery at this stage of the proceedings.

CMIS also argues that, even if Cigna may bring a recoupment claim under ERISA, it has failed to follow the proper administrative procedures to do so. Namely, CMIS contends that Cigna is seeking an adverse benefits determination,

which would trigger ERISA's internal review requirements. Cigna responds that a fiduciary's claim for reimbursement is not classified as an adverse benefit determination.

ERISA defines an adverse benefit determination as follows:

"[A] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate."

29 CFR § 2560.503-1(m)(4).

Numerous courts have determined that a fiduciary seeking recovery of overpayments is not seeking an adverse benefit determination. *See, e.g., Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association*, 286 F.R.D. 355, 365 (N.D. Ill. 2010). Cigna's recoupment claim is an attempt to recover previous payments, not a denial, reduction, or termination of, or failure to make future payments. Therefore, it is not an adverse benefit determination, and ERISA's administrative procedures need not be followed.

Finally, CMIS argues that Cigna's non-ERISA claims are barred by Illinois state law. Citing 215 ILCS 5/368d, CMIS contends that Cigna may not seek recoupment more than eighteen months after the original payment was made and that Cigna's fraud allegations do not save the claim. Cigna responds that the

eighteen month limitation does not apply to this case, because they are seeking a fraud determination.

Under Illinois law, no "recoupment or offset may be requested or withheld from future payments 18 months or more after the original payment is made, except in cases in which a court, government administrative agency, other tribunal, or independent third-party arbitrator makes or has made a formal finding of fraud or material misrepresentation." 215 ILCS 5/368d(c)(1). Although a court has yet to make a formal finding of fraud, Cigna includes allegations of fraud and negligent misrepresentations in its complaint. At this stage of litigation, these allegations (which the Court must accept as true) are sufficient to trigger the exception to the eighteen month statute of limitations. Illinois state law does not bar Cigna from seeking recoupment of overpayments.

2. <u>Fraud</u>

Cigna alleges that from 2009 until 2013, CMIS submitted numerous reimbursement claims that "grossly overstated" CMIS' actual charges for each patient's care. Cigna further alleges that CMIS knew that the submitted claims contained false information, as CMIS intended to discount or waive patient costs. Therefore, Cigna alleges, CMIS submitted these claims with the intent to defraud. Cigna alleges that it reasonably relied on these claims and overpaid CMIS almost $800,000 in plan benefits. CMIS argues that Cigna has not pled fraud with the particularity required under Rule 9(b).

13

Allegations of fraud must meet heightened pleading standards. Fed. R. Civ. P. 9(b). Fraud must be "pleaded with particularity—which is to say, 'the who, what, when, where, and how.'" *Bank of Am. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Cigna's complaint alleges that CMIS (who) submitted fraudulent claims regarding charges to patients (what) for treatment at its surgical center (where) between 2009 and 2013 (when) seeking reimbursement from Cigna based on "grossly overstated" charges for services provided (how). Based on the allegations as a whole, Cigna has sufficiently pled the who, what, when, where, and how necessary to satisfy Rule 9(b)'s pleading standards.

### 3. Negligent Misrepresentation

In its negligent misrepresentation claim, Cigna again points to the claims CMIS submitted, alleging that these claims were submitted in the course of CMIS' business for the purpose of collecting payments under Cigna's benefit plans. The purpose of submitting these claims was to guide Cigna in its business transactions—primarily, to inform Cigna of the proper amount to reimburse CMIS for the services provided. When CMIS submitted these claims, Cigna alleges, CMIS did not disclose the actual amount it intended to collect from the plan members. Cigna alleges that it relied on the representations contained in the claims and reimbursed CMIS nearly $800,000 to which CMIS was not entitled. CMIS argues that Cigna's negligent misrepresentation claim seeks recovery for pure economic loss and is thus barred by the *Moorman* doctrine.

14

In *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982), the Illinois Supreme Court held that a plaintiff may not recover economic loss suffered by "innocent misrepresentations made by [the] defendant." 435 N.E.2d at 453. There are a number of exceptions to the *Moorman* doctrine, however, each "rooted in the general rule that '[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (quoting *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994)). Economic loss "is recoverable where one intentionally makes false representations, and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman Mfg. Co.*, 91 Ill.2d at 88-89 (internal citations omitted). "A 'precise, case-specific inquiry is required to determine whether'" this exception applies. *Haimberg v. R&M Aviation, Inc.*, 5 Fed. Appx. 543, 548 (7th Cir. 2001) (quoting *Rankow v. First Chicago Corp.*, 870 F.2d 356, 361 (7th Cir. 1989). The appropriate inquiry is whether the party "is truly in the business of supplying information or whether the information is instead provided 'ancillary to the sale or in connection with the sale of merchandise or other matter.'" *Id.* (quoting *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201 (1997)).

In *Haimberg*, the Court relied on an Illinois appellate court decision, *Tolan and Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288 (Ill.App.Ct. 1999). "The *Tolan* court acknowledged that there was a continuum of business providers,

15

ranging from pure information providers, such as lawyers, accountants and inspectors, to middle ground cases, such as insurance agents and financial advisors, to tangible product providers, such as manufacturers." *Haimberg*, 5 Fed. Appx. at 548 (quoting *Tolan*, 719 N.E.2d at 296-97). This continuum identifies three categories of businesses: "(1) businesses that supply only non-informational goods or services, where any information supplied is incidental to the sale of the product; (2) businesses that supply information as well as non-informational goods or services; and (3) businesses that provide a product consisting solely of information." *ABN AMRO, Inc. v. Capitla Int'l, Ltd.*, 595 F. Supp. 2d 805, 852 (N.D. Ill. 2008). The *Moorman* doctrine bars negligent misrepresentation claims against the first category of businesses but allows those claims against the third category of businesses. *Id.* "Between these two extremes lie the more difficult cases, involving defendants whose business it is to provide both tangible goods (or other non-informational goods or services) *and* information. *Rankow v. First Chicago Corp.*, 870 F.2d 356, 364 (7th Cir. 1989). The *Tolan* court determined that in cases where the supplying of information is "central to the business transaction between the parties" the *Moorman* doctrine does not bar recovery. *Tolan*, 719 N.E.2d at 297-98.

Here, based on the allegations in the complaint, CMIS is not primarily in the business of supplying information. Rather, it is a provider of medical services. As in *Tolan*, where the primary business relationship of the parties was to provide architectural advice and guidance, here CMIS' primary business relationship with Cigna is to provide information relating to insurance claims. The entirety of the

16

business transaction between Cigna and CMIS depends upon the information supplied in the claims CMIS submits. Cigna has alleged that it must rely on the information contained in the submitted claims to make reimbursement decisions; this reliance indicates that supplying information is central to the business transaction between CMIS and Cigna. Within the context of its relationship to Cigna, CMIS is a supplier of information that is expected to be relied upon in determining proper payment of claims. Therefore, the *Moorman* doctrine does not bar Cigna's negligent misrepresentation claim.

4. <u>Illinois Consumer Fraud and Deceptive Business Practice Act</u>

Finally, Cigna alleges that CMIS's "unfair and deceptive billing practices" violate the Illinois Fraud and Deceptive Business Practice Act (ICFA). CMIS' billing practices are deceptive, according to Cigna, because they include charges that CMIS does not intend to collect (namely, the patient cost shares). Further, Cigna alleges that CMIS' fee-forgiving practices are unfair because they give CMIS an advantage over in-network providers who expect patients to pay cost shares. Cigna alleges that these practices increase costs to plan sponsors and undermine Cigna's ability to offer "robust networks" of in-network providers because fee-forgiving schemes eliminate plan members' incentives to choose in-network providers. Cigna alleges that, here specifically, CMIS engaged in deceptive practices by submitting claims containing overstated charges. Cigna alleges that it relied on these claims, and overpaid CMIS nearly $800,000 in plan benefits. CMIS argues that Cigna's claim under the ICFA should be dismissed, as Cigna had not

pled its claim with particularity and has not sufficiently alleged the elements of the claim. Cigna contends that it has properly sought relief under the ICFA.

When bringing an action under the ICFA, the plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) such damage was proximately caused by the deceptive act." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014). "When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). When a claim under the Act "involves two businesses who are not consumers, the proper test is…whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989).

Here, as discussed above, Cigna has met the heightened pleading requirements of Rule 9(b). Cigna has alleged the who, what, where, when and how of the fraud. But unlike in *Downers Grove Volkswagen*, where the court held that the plaintiff sufficiently pled consumer-protection concerns by alleging the defendant "published false information about [the plaintiff's] prices for services," 546 N.E.2d at 41, Cigna here has failed to demonstrate that CMIS' practices implicate consumer protection concerns. Cigna has alleged that CMIS has waived

patient costs, instead seeking inflated reimbursement from Cigna alone. In its complaint, Cigna has alleged that it has suffered harm, but it has not alleged that CMIS' actions address consumer protection concerns. Therefore, Cigna's ICFA claim (Count V of the complaint) will be dismissed.

IV. Conclusion

For the reasons explained above, CMIS' motion to dismiss [13] is granted in part and denied in part. The motion is granted as to Count V of the complaint (the ICFA claim) and denied in all other respects.

Date: October 29, 2015

ENTERED:

_____
John Robert Blakey
United States District Judge