UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE CO. and CIGNA HEALTH & LIFE INSURANCE CO., | |
| Plaintiff, | Case No. 14-cv-8777 |
| v. | Judge John Robert Blakey |
| SOUTHWEST SURGERY CENTER, LLC, d/b/a CENTER FOR MINIMALLY INVASIVE SURGERY | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (Cigna) sued Southwest Surgery Center (CMIS) for insurance coverage costs that Cigna allegedly overpaid CMIS. [1]. CMIS brought counterclaims alleging that Cigna wrongfully withheld payments for claims properly filed by CMIS. [125]. Cigna moved to dismiss CMIS' third counterclaim, which alleges that Cigna violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 *et seq*. [127]. For the reasons explained below, this Court grants Cigna's motion.

I.  **The Counterclaim's Allegations**

This Court incorporates by reference, and presumes familiarity with, its prior opinion addressing CMIS' motion to dismiss Cigna's complaint [47]. This Court provides additional facts relevant to CMIS' counterclaim but only briefly revisits the relevant transactions, from which both parties' claims arise.

1

CMIS alleges that Cigna makes representatives available to answer health care providers' questions about whether Cigna's insurance plans cover certain services. [125] ¶ 13. Providers like CMIS can call these representatives and confirm the scope of coverage for particular patients. *See id.* ¶¶ 14–16. The answers that Cigna's agents provide during these phone calls are "supposed to be true and accurate" and constitute "Cigna's unambiguous promise to pay the provider for the service." *Id.* ¶¶ 15–16.

After May 15, 2010, CMIS did not have a direct written contract with Cigna, and so lacked access to proof of patient coverage under Cigna's health insurance plans. *Id.* ¶ 18. As a result, CMIS would call Cigna to verify the coverage and eligibility for Cigna insureds seeking medical services from CMIS. *Id.* ¶ 19. CMIS called Cigna "before providing services to each insured," and relied upon Cigna's "coverage and eligibility verifications in deciding whether to deliver its services to Cigna's insureds without requiring the patients to pay CMIS's bill in full" at the time of the service. *Id.* ¶¶ 19, 20. If CMIS required patients to pay upfront and in full, that would "leave the patients in the position of having to file claims for reimbursement with Cigna if they wanted to get the benefit of their health insurance." *Id.* ¶ 20.

Between May 2011 and August 2014, CMIS provided "facility services" to numerous patients insured by or through Cigna; these services include the use of CMIS' operating rooms, supplies, and nursing services. *See id.* ¶¶ 23–25; [125-1] at 2–4. Before providing facility services to these insureds, CMIS called Cigna to

verify their eligibility and coverage and thus determine whether Cigna would pay CMIS the costs of those services. [125] ¶ 26. Cigna's agents represented that these insureds "were covered and eligible for benefits for the services" CMIS planned to provide. *Id.* ¶ 28. Cigna's agents gave specific information about the dollar limits and out-of-pocket expense maximums applicable to the insureds, but never disclosed any other limitations on coverage. *See id.* ¶¶ 29–30.

Because CMIS lacked access to the insureds' health plans and policies, it relied upon Cigna's coverage verifications. *See id.* ¶¶ 32–35. As a result, CMIS did not require its patients to pay their bills in full at the time CMIS provided a service. *Id.* ¶¶ 36–37. Instead, CMIS billed Cigna after providing its services to the insureds, submitting properly completed forms for payment under the insureds' plans. *Id.* ¶¶ 38–39. Cigna never paid CMIS the amounts its agents cited during the coverage and eligibility verification phone calls, damaging CMIS in an amount exceeding $75,000. *Id.* ¶¶ 40, 43.

In August 2012, Cigna flagged CMIS' account because of the fee-forgiveness scheme alleged in Cigna's complaint, *see* [1] ¶¶ 24–37, 46, and CMIS' failure to produce certain requested information, [125] ¶ 53. As a result of that flag, Cigna's claim system denied CMIS claims submitted from that point forward. *See id.*; [125-1] at 6–8. From August 2012 through August 2014, Cigna denied numerous CMIS claims for various medical services. [125] ¶ 53; [125-1] at 6–8. During that period, however, Cigna agents continued to verify coverage and eligibility for their insureds when CMIS agents called about specific patients. *See* [125] ¶¶ 47–54. Thus, Cigna

agents confirmed that Cigna would pay CMIS' costs in these verification calls while the account flag—blocking payment of CMIS' claims—remained in place. *See id.* ¶¶ 53–54. CMIS alleges that the misrepresentations made during these verification calls were knowing and intentional. *Id.* ¶¶ 55–56. Had CMIS known Cigna would not pay for the services CMIS provided to these insureds, CMIS "would have taken upfront payments" from those patients "or sent them to another facility." *Id.* ¶ 58. Cigna has not paid the amounts that its agents indicated it would pay CMIS for the services provided to these insureds, damaging CMIS in excess of $75,000. *Id.* ¶ 62.

With respect to these insureds—whose claims CMIS filed between August 2012 and August 2014—CMIS alleges that Cigna misrepresented their eligibility and coverage "in the course of its business of supplying patients and providers with information about the patients' health care coverage. *Id.* ¶ 66. CMIS also claims that Cigna's misrepresentations "harmed the patient consumers and CMIS because it deceived them into believing Cigna would pay for the services to be performed at CMIS when, in fact, it would not." *Id.* ¶ 67.

CMIS filed its amended counterclaim in January 2018, alleging claims for promissory estoppel (Count I), fraud (Count II), and violations of the ICFA (Count III). *Id.* at 4, 8, 10. This opinion only addresses Cigna's motion to dismiss Count III of CMIS' counterclaim. [127].

## II. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d

1074, 1080 (7th Cir. 1997). A counterclaim must meet the same standard as a complaint to survive a motion to dismiss. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Thus, it must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the counter-defendant "fair notice" of the claim and its basis, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The counterclaim must state a facially plausible claim to relief: the alleged facts must permit "the reasonable inference" that the counter-defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating a counterclaim, this Court draws all reasonable inferences in the counter-plaintiff's favor and accepts all well-pleaded allegations as true. *See id*. This Court need not, however, accept legal conclusions or conclusory allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

Because CMIS' third counterclaim sounds in fraud, it must also meet Rule 9(b)'s heightened pleading requirements. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Rule 9(b) demands that claimants alleging fraud "state with particularity the circumstances constituting fraud." Particularity requires that plaintiffs "describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp.*

*Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks omitted). Where, as here, the alleged fraud involves misrepresentation, the plaintiff must state who made "the misrepresentation, the time, place, and content of the misrepresentation," and the method of communication. *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014). In sum, plaintiffs must provide "precision and some measure of substantiation" to support their claims. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted).

## III. Analysis

Cigna argues that CMIS' third counterclaim fails to allege a violation of the ICFA because CMIS does not demonstrate a nexus between the challenged conduct and consumer protection concerns. [128] at 1. CMIS contends that because it generally alleges that Cigna's misrepresentations "harmed the patient consumers," it adequately pleads an ICFA violation. [131] at 4 (citing [125] ¶ 67).

To state a claim under the ICFA, plaintiffs must show: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009)). Where, as here, the parties are "two businesses who are not consumers," the claim can only proceed if the plaintiff demonstrates that "the alleged conduct involves trade

practices addressed to the market generally or otherwise implicates consumer protection concerns." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imps., Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989). As noted above, CMIS' counterclaim must also satisfy the heightened pleading requirements of Rule 9(b), which CMIS does not dispute. *See* [131] at 8.

Here, there is no question that Cigna's challenged conduct—its alleged misrepresentations to CMIS' agents during verification phone calls—did not address "the market generally." *Downers Grove*, 546 N.E.2d at 41. As such, the issue becomes whether CMIS pleads facts showing that this conduct "implicates consumer-protection concerns." *Id.* Although no bright-line test determines the point at which a challenged act implicates such concerns, courts generally look for conduct that would confuse or deceive consumers, or conduct "of sufficient magnitude to be likely to affect the market generally." *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 793 (N.D. Ill. 2010) (collecting cases and quoting *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004)); *see also ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 955 (N.D. Ill. 2016). CMIS' allegations encompass neither type of conduct.

CMIS' claim arises from the alleged misrepresentations that Cigna's agents made to CMIS itself, and the resulting damage to CMIS. *See* [125] ¶¶ 13–40, 47–58. Beyond a single conclusory statement that Cigna's misrepresentations "harmed the patient consumers" because Cigna "deceived them into believing Cigna would pay" for CMIS' services, *id.* ¶ 67, CMIS fails to explain how Cigna's actions harmed the

7

patients or otherwise implicate consumer-protection concerns. Indeed, CMIS' claim indicates that it absorbed any damage caused by Cigna's misrepresentations; it never alleges that any costs have been or will be passed on to CMIS' patients as a result of its dispute with Cigna. *See id.* ¶¶ 19–20, 58, 62, 70. Because CMIS "provides no factual matter" to support an inference that Cigna's conduct—even if deceitful—affects consumers in any way, CMIS fails to state a claim under the ICFA. *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 651 (N.D. Ill. 2015).

CMIS now frames its counterclaim as alleging that "Cigna's conduct induced consumers to incur charges for costly healthcare services only to later learn that their insurance will not pay for the services." [131] at 4. But CMIS' counterclaim never states that consumers must pay these unexpected costs; instead, it details the costs that CMIS absorbed because of Cigna's misrepresentations. With respect to its patients, CMIS' brief provides only the conclusory statement noted above, which, as discussed, fails to show how Cigna's alleged misconduct harmed consumers. *See* [125] ¶ 67; *ATC Healthcare Servs.*, 192 F. Supp. 3d at 955 (noting that a single "broad, conclusory statement is insufficient to state a claim"); *Roppo*, 100 F. Supp. 3d at 651. Absent additional factual allegations setting out a connection between Cigna's acts and consumer harm, CMIS' ICFA claim cannot proceed. *See ATC Healthcare Servs.*, 192 F. Supp. 3d at 955; *Roppo*, 100 F. Supp. 3d at 651.

CMIS' cited authorities fail to alter this Court's analysis. The plaintiff in *Dent-A-Med, Inc. v. Lifetime Smiles, P.C.* detailed the specific financial harm to consumers directly caused by the defendant's fraud—precisely what CMIS fails to

do here. *See* No. 04-C-4780, 2006 WL 3147694, at *6 (N.D. Ill. Nov. 1, 2006). And in *Walsh Chiropractic, Ltd. v. StrataCare, Inc.*, the plaintiff alleged sufficient facts supporting the inference that consumer patients would have to pay fee increases because of the fraud perpetrated on their medical providers. *See* 752 F. Supp. 2d 896, 913 (S.D. Ill. 2010). Here, by contrast, this Court cannot draw such an inference on the basis of CMIS' present allegations. Rather, its claim demonstrates only the harm CMIS suffered by excusing patients from payments it assumed it could recover from Cigna. Harm to the insurer or provider that is not passed on to the patient consumers does not implicate consumer protection concerns. *See Am. Inter-Fid. Corp. v. M. L. Sullivan Ins. Agency, Inc.*, No. 15-C-4545, 2017 WL 2506393, at *2 (N.D. Ill. June 9, 2017); *ATC Healthcare Servs.*, 192 F. Supp. 3d at 955. Accordingly, this Court dismisses CMIS' ICFA claim.

**IV.  Conclusion**

For the reasons explained above, this Court grants Cigna's motion to dismiss CMIS' third counterclaim [127]. CMIS may file an amended counterclaim on or before 6/8/2018, if it can do so consistent with its obligations under Rule 11. Consistent with this Court's case management order [124] no further amendments will be permitted.

Dated:  May 24, 2018

Entered:

_____
John Robert Blakey
United States District Judge
