# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Connecticut General Life Insurance
Company and Cigna Health and Life
Insurance Company,

      Plaintiff,

      v.

Southwest Surgery Center, LLC,
d/b/a Center for Minimally Invasive
Surgery,

      Defendant.

Case No. 14 CV 08777

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (Cigna), a managed care company responsible for administering health and welfare benefit plans, brings this action against Southwest Surgery Center, LLC (CMIS), an out-of-network health care provider. Cigna seeks a declaratory judgment that CMIS has engaged in fee-forgiving practices that have eliminated Cigna's obligation to pay or otherwise reimburse CMIS for services provided. Additionally, Cigna asserts claims of recoupment of overpayments received by CMIS; fraudulent misrepresentation; and negligent misrepresentation. CMIS counterclaims to recover more than $4 million in billed charges on reimbursement claims that Cigna denied, and asserts claims for promissory estoppel, fraud, and violations of the Illinois Consumer Fraud Act.

Cigna moves to dismiss Count III of CMIS' second amended counterclaim [159], and for summary judgment on all counts of CMIS' second amended counterclaim [143]. CMIS moves for partial summary judgment on Counts II, III, and IV of Cigna's Complaint [151], and for partial summary judgment on claims where there is no evidence of fee-forgiveness or Cigna is equitably estopped [154].

For the reasons explained below, this Court: (1) denies Cigna's motion to dismiss Count III of CMIS' second amended counterclaim; (2) grants summary judgment to Cigna on all counts of CMIS' second amended counterclaim; (3) grants in part, and denies in part, CMIS' motion for summary judgment on Counts II, III, and IV of Cigna's complaint; and (4) denies CMIS' motion for partial summary judgment on claims where there is no evidence of fee-forgiveness or Cigna is equitably estopped.

I.   **Background**

The following facts come from Cigna's statement of facts [144]; CMIS' response to Cigna's statement of facts and additional facts [172]; Cigna's response to CMIS' statement of additional facts [197]; CMIS' statements of facts [153] [156]; Cigna's responses to CMIS' statements of facts and additional facts [175] [179]; and CMIS' responses to Cigna's statements of additional facts [192] [193].

**A. The Parties**

Cigna provides claims administration and insurance services for health benefit plans that employers sponsor to provide health care coverage to employees and their dependents. [144] ¶ 4. As part of the administration of these plans, Cigna provides

coverage for both "in-network" and "out-of-network" health care providers. *Id.* ¶ 5. In-network providers often contract with Cigna to provide medical services to plan members for a negotiated set of fees as payment in full for covered services, while out-of-network providers set their own fees. *Id.* Cigna says that out-of-network providers generally charge higher amounts than in-network providers and that, under its plans, members generally pay a higher deductible and lower coinsurance when they select care from out-of-network providers. *Id.* ¶¶ 5, 7. CMIS, on the other hand, says that out-of-network providers may charge higher or lower amounts than in-network providers, and that whether a plan member pays higher or lower deductibles, coinsurance, and copayments depends upon a variety of factors. [172] ¶¶ 5, 7.

CMIS is an ambulatory surgical center located in Mokena, Illinois. [156] ¶ 5. CMIS was a contractual in-network provider for Cigna for many years. [197] ¶ 1. As an in-network provider, CMIS agreed to accept payment at negotiated contract rates that were often less than its usual billed or standard rates. [156] ¶ 9. In May 2010, Cigna and CMIS terminated their contract, and CMIS thereafter became an out-of-network provider with no direct contractual relationship with Cigna. *Id.* ¶¶ 19–20. As an out-of-network provider, CMIS was not required to accept discounted reimbursement rates and was free to bill patients for the balance between any amount Cigna paid and CMIS' charges. *Id.* ¶¶ 21–22.

## B. Fee-Forgiveness

Cigna asserts that some out-of-network providers engage in fee-forgiveness schemes, where they do not bill patients for deductibles, copayments, or coinsurance. [144] ¶ 9. Cigna says fee-forgiving, while lowering the out-of-pocket expenses for plan members, inflates the overall cost of healthcare for plans and their plan members because it annuls members' incentives to use in-network services. *Id.*

Cigna says that its plans discourage fee-forgiving practices by: (1) excluding coverage for "charges which [the patient is] not obligated to pay or for which [the patient is] not billed or for which [the patient] would not have been billed except that [the patient] were covered under this plan"; and (2) limiting coverage to "Covered Expenses," which are expenses actually incurred by the patient after he becomes insured. *Id.* ¶ 10.

## C. CMIS' Claims Submissions to Cigna

Cigna alleges that, since 2009, CMIS engaged in a fee-forgiveness scheme, pursuant to which it filed claims with Cigna for inflated and inaccurate charges while waiving patient cost shares to gain an unfair advantage over Cigna's in-network providers. *See* [1].

CMIS says that it submitted each of its claims at issue to Cigna on a "UB04 form," which asks for CMIS' total charges for each of the billing codes related to one of CMIS' services. [153] ¶¶ 10, 13. CMIS says that it truthfully and accurately listed its total charges on each UB04 form, and sent each form to Cigna, who then

adjudicated the claim, notified the patient of the patient's cost share, and sent payment to CMIS for Cigna's share.  *Id.* ¶¶ 14–15.

Cigna says, however, that CMIS submitted its reimbursement claims to Cigna via electronic transmissions to Cigna's claims processing platforms, not UB04 forms. [175] ¶¶ 10, 15, 21.  The claims processing platform required CMIS to list, among other things, patient demographic data, billed charges corresponding to each service code, and the total amount of billed charges.  [175-2] ¶ 5.

### D. Cigna's Investigation Into CMIS' Billing Practices

Around May 2011, Cigna's Special Investigation Unit (SIU) began investigating CMIS' billing practices.  [144] ¶ 11.  In June 2012, Cigna sent to CMIS an audit letter requesting CMIS' out-of-network billing policies and ledgers on 10 Cigna members treated at CMIS' facility.  *Id.* ¶ 14.  CMIS did not respond to this letter, so Cigna sent a second audit letter in July 2012, asking how CMIS collects payments from Cigna members, and whether, as a non-contracted facility, CMIS collects payments on members' full out-of-network cost shares.  *Id.* ¶ 15.  CMIS does not dispute that Cigna sent these audit letters, but says that, as an out-of-network provider, it had no obligation to provide Cigna with any information regarding its billing policies or patient payments ledgers.  [172] ¶¶ 14–15.

Cigna says that, because CMIS did not provide any information in response to Cigna's audit letters, in August 2012, SIU flagged CMIS and began denying CMIS' claims.  [144] ¶ 18.  Between August 1, 2012 and February 28, 2013, Cigna denied

over $600,000 of CMIS' billed charges; between March 1, 2013 and December 31, 2013, Cigna denied over $1.4 million of CMIS' billed charges. *Id.* ¶¶ 18–19.

### E. CMIS' Insurance Verification Calls to Cigna

CMIS bases its counterclaims upon pre-service communications with Cigna, primarily insurance verification calls CMIS' employees made to Cigna's customer service number. [144] ¶ 26. CMIS alleges that, during the verification calls, Cigna's representatives promised to pay the billed charges that CMIS would submit after it provided services to plan members. *Id.*

CMIS employees Vikki Thomas, Jennifer Cook Szoldatits, Angela Bazan, and Isadora Sevilla made the verification calls to Cigna. *Id.* ¶ 27. Szoldatits, Bazan, and Sevilla testified that Cigna never promised or guaranteed that Cigna would pay CMIS for its services during these calls. [145-26] at 16; [145-27] at 21; [145-28] at 15. Thomas testified that she did not recall whether Cigna's representatives promised or guaranteed payment for CMIS' services. [145-29] at 17.

Between 2005 and February 2013, the following disclaimer played at the beginning of every call that CMIS made to Cigna:

> The following information does not guarantee coverage or payment. The governing document for a patient's coverage is their Summary Plan Description. Payment for services will be based on medical necessity, plan provisions, and eligibility at the time of service.

[144] ¶¶ 21, 23. And, since February 2013, the following disclaimer played at the beginning of every call that CMIS made to Cigna:

> By continuing with this call, you understand, accept and agree that the following covered services information does not guarantee coverage or payment and is subject to all benefit plan provisions. Please refer to the

> Summary Plan Description for coverage. Payment for services will be
> based on medical necessity, plan provisions, including limitations and
> exclusions, and eligibility at the time of service.

*Id.* ¶¶ 22, 23.

### F. Procedural History

Cigna filed its complaint against CMIS in November 2014 seeking, among other things: (1) a declaratory judgment that it need not reimburse CMIS under the Cigna plans because CMIS waived patients' cost shares, making its claims subject to the plans' fee-forgiveness exclusion; and (2) recovery of $800,000 it paid to CMS before August 2012. [1]. The complaint additionally asserts claims for recoupment; fraudulent misrepresentation; negligent misrepresentation; and violations of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA). *Id.* This Court dismissed Cigna's ICFA claim in October 2015. [47] at 17–19.

CMIS filed its counterclaim in December 2014, and subsequently filed an amended counterclaim in January 2018. [16]; [125]. Its amended counterclaim, which is based upon Cigna's purported refusal to pay CMIS' claims after Cigna flagged CMIS, asserts causes of action for promissory estoppel, fraud, and violations of the ICFA, and requests prejudgment interest. [125].

In May 2018, this Court granted Cigna's motion to dismiss CMIS' ICFA claim [140]. One month later, CMIS filed a second amended counterclaim, which realleged an ICFA claim. [142].

## II.  **Legal Standard**

### A.  **Rule 12(b)(6) Motion to Dismiss**

Under Rule 12(b)(6), this Court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts and draw all reasonable inferences in its favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).  To survive a motion under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A well-pleaded complaint may proceed even if it appears that "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.  Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

### B. **Summary Judgment**

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a

reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. Analysis

### A. Cigna's Motion to Dismiss

To prevail on its ICFA counterclaim, CMIS must plead and prove: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014). Where, as here, the parties are two businesses who are not consumers, the claim proceeds only if "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Downers Grove Volkswagen v. Wigglesworth Imps., Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989).

This Court dismissed CMIS' ICFA claim once before because CMIS alleged "only the harm CMIS suffered by excusing patients from payments it assumed it could recover from Cigna," and therefore, Cigna's alleged conduct did not implicate consumer protection concerns. [140] at 9. Following this Court's order, CMIS amended its counterclaim and added the allegation that, if "Cigna does not pay CMIS' claims, CMIS will be forced to enforce the patient guarantees and collect its billed charges from the patient consumers, resulting in hundreds of thousands of dollars being passed on to CMIS' patients." [142] ¶ 74. Cigna contends that this Court should dismiss the ICFA claim again because CMIS' new allegation is based upon only a "speculative possibility" that consumers may be harmed in the future, and not actual, existing harm to consumers. [198] at 1.

This Court disagrees. Cigna cites no authority holding that the consumer protection nexus can only be met by pleading actual, existing harm. To the contrary, CMIS need only plausibly allege that Cigna's conduct "implicates consumer protection concerns." *Frazier v. U.S. Bank Nat. Ass'n*, No. 11 C 8775, 2013 WL 1385612, at *4 (N.D. Ill. Apr. 4, 2013); *cf. 3Com Corp. v. Elecs. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 939 (N.D. Ill. 2000) (consumer nexus test not met where there was no allegation of "collateral impact on consumer protection concerns.").

Here, CMIS alleges that Cigna's purported conduct has some collateral effect on consumers—namely, CMIS will have to pass costs onto its customers if Cigna does not pay its claims. [142] ¶ 74. Passing on costs to customers is a recognized consumer protection concern. *See Beatty v. Accident Fund Gen. Ins. Co.*, No.

317CV01001NJRDGW, 2018 WL 3219936, at *11 (S.D. Ill. July 2, 2018) (plaintiff doctor adequately alleged "implication of consumer protection concerns" against insurer by stating that insurer's unpaid interest charges may shift to the doctor's patients); *Walsh Chiropractic, Ltd. v. StrataCare, Inc.*, 752 F. Supp. 2d 896, 913 (S.D. Ill. 2010) (holding that a consumer nexus is met where complaint alleged facts from which the court could infer that patients of medical providers may be subject to fee increases as a result of the defendant's alleged fraud on the medical providers).

Thus, viewing CMIS' allegation as true, which this Court must for the purposes of a Rule 12(b)(6) motion, this Court finds that CMIS has plausibly alleged a consumer protection nexus. This Court denies Cigna's motion to dismiss CMIS' ICFA counterclaim.

## B. Cigna's Motion for Summary Judgment

Cigna moves for summary judgment on all counts of CMIS' second amended counterclaim [143], which asserts causes of action for promissory estoppel, fraud, and violations of the ICFA [142].

### 1. Promissory Estoppel

To recover for promissory estoppel, CMIS must prove that: (1) Cigna made an "unambiguous promise" to CMIS; (2) CMIS relied on such promise; (3) CMIS' reliance was expected and foreseeable by Cigna; and (4) CMIS relied on the promise to its detriment. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 566 (7th Cir. 2012) (citing *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009)).

CMIS' promissory estoppel claim is based upon Cigna representatives' statements during pre-service verification calls. [142] ¶¶ 22–45. CMIS asserts that, through these verifications of coverage and eligibility for benefits, Cigna unambiguously promised to pay CMIS for services CMIS ended up providing to its customers. *Id.* ¶ 31. In moving for summary judgment, Cigna argues that CMIS cannot recover for promissory estoppel because it cannot prove two elements: unambiguous promise and reasonable reliance. [143-1] at 13.

This Court need not reach the "reasonable reliance" element, because it finds that CMIS fails to adduce any evidence of an "unambiguous promise." Indeed, the undisputed evidence shows that there were four CMIS employees who made the verification calls; three out of the four CMIS employees making verification calls to Cigna testified affirmatively that Cigna never promised or guaranteed that it would pay CMIS for its services. [145-26] at 16; [145-27] at 21; [145-28] at 15. The fourth CMIS employee testified that she did not recall Cigna ever promising or guaranteeing payment for CMIS' services. [145-29] at 17. CMIS does not point to any other evidence suggesting that Cigna made any promises—outside of the verification calls—to pay.[1] Thus, the record is devoid of any evidence that Cigna made any unambiguous promises to pay CMIS' billed charges.

In its response, CMIS argues that its employees believed that Cigna's verification of coverage amounted to a promise to pay. [171] at 24. But whether the

---

[1] This Court granted CMIS leave to cite "additional authority" in the form of uncertified transcripts from five different verification calls. [213]. This Court has reviewed the transcripts and finds that none of them reveal that Cigna unambiguously promised to pay later billed charges; at best, they show only that Cigna verified the nature of certain coverage and benefits. *See* [210-1]–[210-5].

employees believed that Cigna would pay remains irrelevant, as they did not testify that Cigna actually promised to pay. Moreover, CMIS conflates verification of eligibility and benefits with promise of payment. Courts have held that a mere *verification of coverage and benefits* is insufficient to constitute an unambiguous *promise of payment. See Advanced Ambulatory Surgical Ctr., Inc. v. Connecticut Gen. Life Ins. Co.*, 261 F. Supp. 3d 889, 896 (N.D. Ill. 2017) (declining to "transform Cigna's mere verification of a patient's benefits into a promise to pay for services."); *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2016 WL 7157522, at *4 (S.D. Tex. Dec. 7, 2016) (noting that "verification [of benefits] was not the same as a promise of payment").

CMIS also points to the testimony of its owner and Rule 30(b)(6) witness, Dr. Patrick Sweeney, its former CEO, Michael Cherny, and its office manager, Mary Kerrigan, who all testified that they believed that Cigna's verifications of coverage constituted unqualified promises of payment. [171] at 24. None of these witnesses, however, have any personal knowledge of what Cigna's representatives said on the verification calls, because they did not make the calls. [144] ¶ 33. Thus, their subjective beliefs that Cigna promised payment are entirely founded upon speculation, and therefore fail to raise a triable issue of fact. *Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 888 (7th Cir. 1998) (witness's deposition and affidavit testimony were on issues where he "plainly lacked personal knowledge," and were thus too speculative to raise triable issues of fact).

Without any evidence that Cigna made any unambiguous promises to pay, CMIS' promissory estoppel claim fails as a matter of law. *See Advanced Ambulatory*, 261 F. Supp. 3d at 896 (N.D. Ill. 2017) (granting summary judgment against medical center on its promissory estoppel claim, where "all the evidence indicates that Cigna agents did not explicitly promise or agree to reimburse [the center]."); *Centro Medico Panamericano, Ltd. v. Laborers' Welfare Fund of Health & Welfare Dep't of Const. & Gen. Laborers' Dist. Council of Chicago & Vicinity*, 33 N.E.3d 691, 694–95 (Ill. App. Ct. 2015) (affirming grant of summary judgment where party failed to adduce any evidence of an unambiguous oral promise); *cf. Connecticut Gen. Life Ins. Co. v. Grand Ave. Surgical Ctr., Ltd.*, 181 F. Supp. 3d 538, 545 (N.D. Ill. 2015) (denying summary judgment on promissory estoppel claim where there was some evidence that insurer promised to pay a "specific percentage of . . . billed charges."). This Court grants summary judgment to Cigna on CMIS' promissory estoppel counterclaim.

### 2. Fraud

On its fraud claim, CMIS must prove by clear and convincing evidence that Cigna: (1) made a false statement of material fact; (ii) knew or believed the statement was false; (3) intended and did induce CMIS to reasonably rely and act upon the statement; and (4) CMIS suffered damages from that reliance. *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 852 (7th Cir. 2007) (citing *Williams v. Chicago Osteopathic Health Sys.*, 654 N.E.2d 13, 619 (Ill. App. Ct. 1995)). Additionally, "promissory fraud, involving a false statement of intent regarding future conduct, is

generally not actionable under Illinois law unless the plaintiff also proves that the act was a part of a scheme to defraud." *Id.* at 853.

Like its promissory estoppel counterclaim, CMIS bases its fraud claim upon statements Cigna representatives made during verification calls. [142] ¶¶ 46–62. Specifically, CMIS alleges that (1) Cigna "knew at the time it verified eligibility and coverage" that it would not pay CMIS for services; and (2) Cigna knew its representations about eligibility and coverage were false at the time they made them because "it knew it would not pay CMIS." *Id.* ¶¶ 54–55.

The parties dispute whether CMIS alleges plain fraud or promissory fraud. *See* [143-1] at 25; [171] at 29–30. CMIS contends that it brings an ordinary fraud claim because it alleges that Cigna said coverage was available when, in fact, coverage was not available because it knew it would never pay CMIS. [171] at 30. Cigna, on the other hand, argues that because CMIS' alleged harm arises from the nonpayment of CMIS' claims, CMIS' fraud counterclaim falls within the contours of a promissory fraud claim. [196] at 27–28.

In viewing the allegations contained in CMIS' counterclaim, this Court finds that the fraud claim is based upon the premise that Cigna had already decided to flag CMIS' account and deny claims it submitted, and that, *because Cigna had allegedly already decided that it would deny CMIS' claims*, Cigna's calls verifying eligibility and benefits constituted misrepresentations because they falsely implied that Cigna would pay CMIS' claims in the future. [142] ¶¶ 53–62. In short, CMIS does not contend that Cigna's statements about benefits and eligibility were false, but rather

that they implied a promise of future conduct—payment for CMIS' services. As such, CMIS brings a promissory fraud counterclaim. *See, e.g.*, *Advanced Ambulatory*, 261 F. Supp. 3d at 898 ("Because [the medical provider] does not claim that Cigna's statements about a plan member's benefits were themselves false or fraudulent, but instead that they implied a promise of future conduct, [medical provider]'s fraud count is thus one for promissory fraud."); *Zic v. Italian Gov't Travel Office*, 149 F. Supp. 2d 473, 477 (N.D. Ill. 2001) (promissory fraud involves "false promises of *future* payment to induce a party to provide services") (emphasis added).

A claim for fraud, promissory or otherwise, requires proof that "*at the time the allegedly fraudulent statement was made,* it was an intentional misrepresentation." *Caremark*, 493 F.3d at 853 (emphasis in original). For purposes of promissory fraud, this means that CMIS must prove that: (1) Cigna promised to pay CMIS for its services, and (2) at the time Cigna promised to pay, it had no intention to do so. *See id.* (promissory fraud requires proof that "when the promise was made, the promisor had no intent to fulfill it.").

Here, CMIS faces the same barriers of proof it did with its promissory estoppel claim, because it cannot marshal any evidence that Cigna ever promised to pay CMIS for its services. Absent such evidence, CMIS' promissory fraud claim fails as a matter of law. *See, e.g.*, *Advanced Ambulatory*, 261 F. Supp. 3d at 898 (granting summary judgment on promissory fraud claim where there was no evidence of Cigna's "promise to pay" during verification phone calls). This Court grants summary judgment to Cigna on CMIS' promissory fraud counterclaim.

### 3. ICFA

CMIS' remaining counterclaim alleges an ICFA violation. As with the promissory estoppel and fraud claims, CMIS does not actually contend that Cigna provided false information regarding coverage as it relates to eligibility and benefits—indeed, its second amended counterclaim contains no such allegation. S*ee generally* [142]. Rather, CMIS' ICFA counterclaim is again based upon the premise that Cigna's verification of eligibility and benefits equated to a promise to pay, and that Cigna is liable because it did not in fact pay. *Id.* ¶ 65 (alleging that Cigna misrepresented that patients were eligible and covered for services when, in fact, Cigna "had no intention of paying for the services."), ¶ 67 (alleging that Cigna's purported misrepresentations about eligibility and coverage harmed CMIS because it deceived CMIS into believing Cigna would pay for the services).

To prevail on its ICFA counterclaim, CMIS must set forth "some evidence raising a genuine issue of material fact" that Cigna "intended to induce" CMIS' reliance upon Cigna's alleged misrepresentations or omissions. *Great Lakes Reinsurance (UK) v. 1600 W. Venture, LLC*, 261 F. Supp. 3d 860, 866 (N.D. Ill. 2017). In its response, however, CMIS fails to set forth any specific evidence of Cigna's intent to induce CMIS' reliance. It states in a conclusory manner that Cigna failed to "fully, completely, and accurately answer providers' questions about coverage," and argues that the natural consequence of Cigna's actions was that CMIS would rely upon that information. [171] at 35. But, as discussed above, CMIS' contention is not actually

that CMIS misrepresented the extent of a customer's eligibility or benefits,[2] but rather that CMIS implied through its verifications of eligibility and benefits that it would pay for CMIS' services.

CMIS' ICFA counterclaim is therefore flawed for the same reasons as its other counterclaims: CMIS has no evidence that Cigna ever made any false statement regarding payment. In fact, the evidence shows that, since 2005, disclaimers preceded every call that CMIS placed to Cigna, which made clear that any information CMIS received on the calls did not equate to a guarantee of "coverage or payment." [144] ¶¶ 21–23. On this record, no fact-finder could reasonably conclude that Cigna intended to induce CMIS' reliance upon any purported misrepresentations or material omissions. *See, e.g.*, *Krause v. GE Capital Mortg. Serv., Inc.*, 731 N.E.2d 302, 311–12 (Ill. App. Ct. 2000) (affirming summary judgment on ICFA claim where the undisputed evidence established that the defendant made "full and accurate disclosure[s]" and "did not conceal, suppress, or hide any material facts."). CMIS' ICFA counterclaim fails as a matter of law.[3]

## C. CMIS' Motion for Partial Summary Judgment on Counts II, III, and IV of Cigna's Complaint

Count II of Cigna's complaint seeks recoupment of overpayments it made to CMIS as a result of CMIS' alleged fee-forgiving practices. [1] ¶¶ 60–70. Counts III

---

[2] Even if it were, CMIS has not set forth any evidence that Cigna actually gave false information (or omitted material information) regarding a customer's eligibility or benefits.

[3] Because this Court grants summary judgment to Cigna on all counts of CMIS' second amended counterclaim, it also necessarily finds that CMIS is not entitled to any prejudgment interest. Accordingly, this Court need not consider the merits of the parties' arguments on this issue.

and IV assert state-law causes of action for fraudulent misrepresentation and negligent misrepresentation, respectively. *Id.* ¶¶ 71–80, 81–90.

CMIS moves for partial summary judgment on Counts II through IV of Cigna's complaint on two bases. First, CMIS argues that, based upon the Supreme Court's decision in *Montanile v. Board of Trustees of National Elevator Industry Health Benefit Plan*, 136 S. Ct. 651 (2016), Cigna cannot recover any money that arise from its payments to CMIS for patients with coverage under ERISA-governed plans. [152] at 5–8. Second, CMIS contends that it is entitled to summary judgment on Cigna's misrepresentation claims because there is no evidence that CMIS ever made any misrepresentation or omission of material fact. *Id.* at 8–11. This Court addresses each argument in turn below.

### 1. Recovery of Payments Pursuant to ERISA-Governed Plans

Section 502(a) of ERISA authorizes plan fiduciaries of ERISA-governed plans, like Cigna, to bring suits "to obtain other equitable relief . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). In *Montanile*, the Supreme Court held that plan fiduciaries who seek recovery based on an equitable lien by agreement may assert the lien "only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds." 136 S. Ct. at 658.

CMIS argues that *Montanile* bars all of Cigna's claims that seek recoupment of payments it issued pursuant to ERISA-governed plans because the undisputed evidence shows that CMIS did not keep the payments in a "separate, identifiable

fund." [152] at 8; [194] at 2–4. In response, Cigna concedes that *Montanile* mandates summary judgment to CMIS on Count II of Cigna's complaint to the extent that it seeks equitable restitution under Section 502(a) of ERISA for funds paid pursuant to ERISA-governed plans. [173] at 14.

Cigna disagrees, however, that *Montanile* bars it from recouping payments it made under ERISA-governed plans where it seeks recovery pursuant to its state-law misrepresentation claims (Counts III and IV of its complaint). *Id.* at 14–15. Cigna argues that, because these claims arise under state law, do not seek equitable relief under ERISA, and are not based solely on the terms of the patients' ERISA-governed plan, *Montanile* is inapplicable. *Id.* Thus, the legal dispute before this Court is whether Cigna may recoup payments it made for ERISA-governed plans where it seeks recovery under state-law claims, not Section 502(a) of ERISA.

In *Montanile*, the Supreme Court held only that a plan fiduciary may not sue to attach a plan participant's general assets under Section 502(a) of ERISA, because the suit is not one for "appropriate equitable relief." 136 S. Ct. at 653–54, 662. The Court said nothing about a plan beneficiary's right to recover legal damages based upon state-law claims where those claims arise independently from any right to recover equitable damages under ERISA. *See generally Montanile*, 136 S. Ct. 651.

Here, under Counts III and IV of its complaint, Cigna seeks recovery for CMIS' alleged tortious conduct, and the ERISA-based plans are merely the context in which CMIS committed the alleged torts. Under these circumstances, Cigna is free to pursue recoupment relating to those ERISA-based plans under its state-law tort

claims. *See Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 781–82 (7th Cir. 2002) (where the ERISA-based plan was merely the "context" in which the alleged fraud was committed, plan fiduciary was "entitled under Illinois law to sue in tort to recover damages for that fraud."); *Aetna Life Ins. Co. v. Humble Surgical Hosp., LLC*, No. CV H-12-1206, 2016 WL 7496743, at *3 (S.D. Tex. Dec. 31, 2016) (holding that insurer maintained common-law rights to recoup overpayments relating to ERISA-based plans because the "plans are merely the context of [the provider]'s fraud."), *appeal dismissed sub nom. Aetna Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, No. 17-20123, 2017 WL 3753665 (5th Cir. Apr. 5, 2017).

Accordingly, this Court grants summary judgment to CMIS on Count II of Cigna's complaint only to the extent it seeks equitable recoupment under Section 502(a)(3) of ERISA for payments Cigna made under ERISA-governed plans.

### 2. Fraudulent and Negligent Misrepresentation

For both misrepresentation claims, Cigna must prove that CMIS made a false statement of material fact. *Kopley Grp. V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 228 (Ill. App. Ct. 2007) (fraudulent and negligent misrepresentation share all common elements except for the defendant's mental state).

CMIS argues that it is entitled to summary judgment on Cigna's misrepresentation claims because there is no evidence that CMIS made any false statement. [152] at 8–11. CMIS' argument is based entirely upon its contention that Cigna's claim forms, UB04 forms, ask only that CMIS describe services provided to

the patient and for CMIS' total charges for those services, and not for the amount of money CMIS intended, or expected, to collect from the patient or Cigna. *Id.* at 9. And, CMIS contends that the total charges it listed for each claim truthfully and accurately reflected CMIS' actual charges. *Id.* at 10.

Cigna, however, disputes that CMIS submitted its charges on UB04 forms, contending instead that CMIS submitted all of its charges via electronic submission to its claims processing platform that required CMIS to list, among other things, patient demographic data, billed charges corresponding to each service code, and the total amount of billed charges. [175] ¶¶ 10, 15, 21; [175-2] ¶ 5. Cigna says that CMIS' electronically submitted charges were false because they included amounts that CMIS had no intention of collecting from patients. [173] at 8.

The parties' dispute about the method in which CMIS submitted its charges precludes summary judgment on the misrepresentation claims, because whether CMIS made any false statement depends upon its disclosure obligations in the first place. If, for instance, Cigna's claims submissions process required CMIS to disclose that it waived patients' cost shares, then a fact-finder could reasonably conclude that CMIS did make false statements if it waived patients' cost shares and failed to reveal that to Cigna. Conversely, if Cigna's claims submissions process did not require any such disclosures, then CMIS may not have made any misrepresentation at all, even if it did waive patients' cost shares. On this record, however, this Court cannot determine as a matter of law that Cigna's claims submissions process did not impose a requirement upon CMIS to make those disclosures. *See, e.g.*, *Aetna Life Ins. Co. v.*

*Huntingdon Valley Surgery Ctr.*, 703 F. App'x 126, 134 (3d Cir. 2017) (vacating grant of summary judgment on insurer's fraud claim where the billing form was ambiguous as to medical provider's disclosure obligations; thus, there was an issue of fact as to whether medical provider submitted fraudulent bills when it listed "total charges" without deducting waived patient fees or informing insurer that it routinely provided such waivers). Accordingly, this Court denies summary judgment on Counts III and IV of Cigna's complaint.

### D. CMIS' Motion for Partial Summary Judgment on Fee-Forgiveness and Equitable Estoppel

CMIS moves for partial summary judgment on another ground, arguing that there is no evidence of fee-forgiveness for some of the claims CMIS submitted to Cigna, and that Cigna should be equitably estopped from enforcing fee-forgiveness for other claims. [155].

### 1. Claims in Exhibits A-C

First, CMIS argues that, for the claims listed on Exhibits A-C of its motion, there is no evidence that CMIS discounted the patients' share. [155] at 11–13. Cigna, on the other hand, urges that summary judgment should be denied because there is compelling evidence that CMIS did discount and waive patients' cost shares for these claims. [178] at 12–13.

For the claims listed in Exhibit A, CMIS contends that it was still an in-network participating provider in Cigna's network. [155] at 11. CMIS says that there is no evidence that it ever (1) billed the patient for anything other than the in-network share that Cigna assigned to these claims, or (2) discounted the patient's share for

these claims. *Id.* at 11–12. But Cigna contends that there is actual evidence that CMIS did discount and waive cost shares owed by the patients in Exhibit A. In support, Cigna produces a table identifying multiple Exhibit A claims for which a patient had a cost share greater than what CMIS actually collected from that patient. [179] ¶ 54. This Court finds that, based upon this evidence, a fact-finder can draw a reasonable inference that CMIS did waive patients' cost shares for the claims in Exhibit A.

Similarly, for the claims in Exhibit B, CMIS contends that it did not discount the patients' cost shares, and rather only invoiced patients for amounts that Cigna approved. [155] at 12–13. Cigna disputes this, too, and again produces a table showing those Exhibit B claims for which CMIS collected less than the full cost shares. [179] ¶ 60. Here again, a reasonable fact-finder could find that CMIS waived patients' cost shares for the claims in Exhibit B.

For the claims listed in Exhibit C, CMIS says that Cigna determined that the patient's share of CMIS' charges was zero, so CMIS could not have waived any portion of the patient's cost share. [155] at 13. Cigna, however, says that the cost shares associated with Exhibit C claims were necessarily zero because Cigna denied those claims. [178] at 17–18; [179] ¶ 64. Cigna argues that its ultimate denial of claims does not mean that CMIS did not waive patients' cost shares. This Court agrees, because even if Cigna ultimately denied the claims that CMIS submitted, it does not necessarily follow that CMIS did not waive its patients' cost shares at the outset. Viewing the facts in the light most favorable to Cigna, this Court finds that even

though Cigna ultimately determined that none of CMIS' submitted charges were covered, CMIS could still have overstated charges (while writing off patients' cost shares) when it sent the actual claims to Cigna.

This Court thus finds genuine issues of material fact as to whether CMIS engaged in fee-forgiveness for the claims in Exhibits A-C, and as such, denies CMIS' motion as to those claims.[4]

## 2. Claims in Exhibit D

Exhibit D to Cigna's motion contains a list of claims with dates of service after August 2012. CMIS argues that Cigna is equitably estopped from denying coverage for the claims in Exhibit D, because Cigna flagged CMIS that month, yet its representatives continued to provide CMIS with verifications of eligibility and benefits. [155] at 14–15.

Equitable estoppel requires proof that:

(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof.

---

[4] Cigna also argues that summary judgment should be denied because CMIS relies almost entirely upon the affidavit of Dr. Sweeney, which Cigna contends is deficient in several respects. [178] at 8–12. Because this Court finds that there is other evidence creating a triable issue regarding whether CMIS engaged in fee-forgiveness, it need not determine whether Dr. Sweeney's affidavit meets the requirements under Rule 56(c)(4).

*W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 679 (7th Cir. 2015) (quoting *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001)).

CMIS argues that equitable estoppel applies because Cigna continued to verify coverage after it flagged CMIS in August 2012, and therefore Cigna's statements confirming that coverage was available were false. [155] at 14–15. This argument is merely a regurgitation of CMIS' arguments in opposition to summary judgment on its counterclaims. As explained above, CMIS' counterclaims fail as a matter of law because there is no evidence that Cigna ever promised to pay billed charges, and its confirmations of coverage and benefits did not amount to promises to pay. *See* Section III.B, *supra*. For that reason, this Court denies summary judgment for the claims listed in Exhibit D.

## IV.    <u>Conclusion</u>

For the reasons explained above, Cigna's motion to dismiss Count III of CMIS' second amended counterclaim [159] is denied; Cigna's motion for summary judgment on CMIS' second amended counterclaim [143] is granted; CMIS' motion for partial summary judgment on Counts II-IV of Cigna's complaint [151] is granted in part, and denied in part; and CMIS' motion for partial summary judgment on claims where there is no evidence of fee-forgiveness or Cigna is equitably estopped [154] is denied. All dates and deadlines stand.


Date:  October 3, 2018

ENTERED:

John Robert Blakey
United States District Judge